## KING v. PARDEE.

1. In Pennsylvania, a resulting trust in land, if not sought to be enforced for a period of twenty-one years, and not reaffirmed and continued, will, under ordinary circumstances, be extinguished.

2. That rule is especially applicable where the party having the legal title has, during the required period of twenty-one years, been in notorious and adverse possession, paying the taxes, exercising all the usual rights of ownership, and his title has for the whole period been on record in the proper office.

ERROR to the Circuit Court of the United States for the Western District of Pennsylvania.

The facts are fully stated in the opinion of the court.

*Mr. George W. Biddle* for the defendant in error.

No counsel appeared for the plaintiffs in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This is an action of ejectment brought in the court below in June, 1871, by James Turnbull, Jr., a subject of Mexico, against Ario Pardee, a citizen of Pennsylvania, to recover one undivided eighth part of a tract of land in Hazel Township, Luzerne County, Pennsylvania, containing four hundred and thirty-nine and one-half acres, known as the Mary Kunkle tract. Turnbull having died *pendente lite*, King and other heirs-at-law were substituted in his stead. Edward Roberts and the executors of Algernon S. Roberts, deceased, were admitted to defend with Pardee as his landlord of the premises in question. Plea, general issue.

On the trial, evidence was given tending to show that Alexander Turnbull died seised of the premises in question on the tenth day of July, 1826, leaving a widow and four children his heirs-at-law; namely, James, Alexander, Jane, and Margaret, all of full age. The widow died in 1832. Alexander Turnbull,

Jr., one of the heirs, died in Philadelphia, in 1835, leaving the plaintiff, his son and sole heir-at-law, then in the thirteenth year of his age. It thus appeared that the plaintiff, as heir-at-law of his father, was entitled to any interest in the lands in question of which his father may have died seised. He left Philadelphia for Mexico in 1850, in the twenty-eighth year of his age.

The defendants gave in evidence a judgment on bond and warrant, rendered in the Court of Common Pleas of Luzerne County on the twenty-second day of February, 1827, against James Turnbull and Alexander Turnbull, Jr. (two of the heirs of Alexander Turnbull), at the suit of William Drysdale, administrator of Alexander Turnbull, Sen., for the sum of $4,980: also, a *fi. fa.* and *venditioni exponas* issued on said judgment; a levy under said writs upon the premises in question; a return by the sheriff of a sale thereof for the sum of $25 on the fourth day of August, 1827; and a deed in pursuance of such sale, to John N. Conyngham, the attorney of the plaintiff in the judgment, bearing date the 14th of April, 1828: also, a deed from Conyngham to Drysdale, the administrator, and plaintiff in the judgment, for a like consideration, dated the 10th of July, 1828. Both of these deeds were recorded on the thirteenth day of January, 1832. The sheriff's deed purported to convey all the right, title, and interest of James Turnbull and Alexander Turnbull, Jr., in and to the premises in question; and the deed from Conyngham conveyed all his title and interest to Drysdale. The interest thus levied on and sold was, of course, one undivided half of the premises in dispute. The claim of the plaintiff is, that this purchase at sheriff's sale by the attorney of the administrator inured, in equity, to the benefit of the heirs or distributees of his grandfather, by way of a resulting trust, which would give him a right to one undivided eighth part of the property.

Jane Turnbull, one of the heirs-at-law of Alexander Turnbull, Sen., was the wife of William Drysdale, the administrator aforesaid. Therefore, at this period, July, 1828, the legal title acquired by William Drysdale in the shares of James and Alexander, together with that of his wife and her sister Margaret, who was unmarried, made up the entire legal title to the premises in dispute.

The defendant then gave in evidence a warranty deed in fee-simple for the whole premises from William Drysdale and his wife and Margaret Turnbull to the defendant Edward Roberts, and Algernon S. Roberts, now deceased, for the consideration of $46,500, which deed was recorded Nov. 23, 1846 ; and also extracts from the assessment-books of Hazel Township, Luzerne County, showing the assessment of the property to the Robertses from 1847 down to the commencement of the suit. Evidence was also given tending to show continued notorious and adverse possession of the property by the defendants from 1846 to the commencement of the suit, by opening and working coal-mines thereon, building coal-breakers, railroads, houses, and other structures, and cutting wood over the whole tract.

The question raised in this case was, whether the resulting trust which it is contended arose in favor of the heirs or distributees of Alexander Turnbull, Sen., upon the purchase made by Drysdale, his administrator, through his attorney, Conyngham, under the judgment and execution against James and Alexander Turnbull, was still valid and in force at the commencement of this action, or whether it was barred by efflux of time.

The associate justice who tried the cause charged the jury as follows : —

" 1. That though William Drysdale acquired the legal title to the land in controversy by the deed of John N. Conyngham to him, dated July 16, 1828, and recorded Jan. 13, 1832, yet he held in trust for the estate of which he was administrator, or rather for the heirs of the estate (there being no creditors), and held one undivided eighth part thereof for Alexander Turnbull, Jr., or his assigns; that this was not an express trust; that it was not declared in the deed of Conyngham, or to Drysdale, but that it was a trust which the law implied, growing out of the relation of the parties. Drysdale, then, was the legal owner, while at the same time there was an equitable right in the heirs of the elder Turnbull to require him to convey the property to them, or, if he had sold it at an advance, to require him to account for the proceeds of his sale."

"The right of Alexander Turnbull, Jr., and that of the plaintiff, who claims as his heir, is merely an equitable one. I will

not, however, now instruct you that the plaintiff cannot recover in this ejectment solely for that reason, but I call your attention to the question, whether the equity which arose when the sheriff's sale was made to Conyngham, and subject to which Drysdale took the land, survived until this suit was brought. Such rights do not live for ever. If they are not asserted within a reasonable time, they die, and generally what is a reasonable time is determined in analogy to the Statute of Limitations. If it be an implied equitable right to land, ordinarily it cannot be enforced after twenty-one years."

" It is true, if a party in whom such a right is vested has no knowledge of its existence, or means of knowledge, the law admits of longer delay in asserting the right." Reference was then made to the evidence which the jury was directed to consider, with the instruction, that if they found " the plaintiff's father, Alexander Turnbull, Jr., or the plaintiff, had knowledge in 1828, when the trust arose, or in 1832, when the deed to Drysdale was recorded, or at any time more than twenty-one years before 1871, when this suit was brought, or that they, or either of them, had means of knowledge that Drysdale, the administrator, had taken the title to himself, and therefore held it in trust, the claim was too stale, that any equity in the plaintiff's favor that may once have existed cannot now be enforced, and that the plaintiff cannot recover."

2. The jury was further instructed, " that, by the Act of Assembly of April 22, 1856, entitled, ' An Act for the greater certainty of title and more secure enjoyment of real estate,' it was enacted that no right of entry shall accrue or action be maintained to enforce any implied or resulting trust as to realty but within five years after such equity or trust accrued, with the right of entry, unless such trust shall have been acknowledged by writing to subsist by the party to be charged therewith within the said period ; with a proviso, that, as to any one affected with a trust by reason of his fraud, the limitation shall begin to run only from the discovery thereof, or when by reasonable diligence the party defrauded might have discovered the same ; and with a further proviso, that any person who would sooner be barred by the act should not be thereby barred for two years after its passage."

This act, the jury were instructed, embraced such a trust as the plaintiff is seeking to enforce in this action; and they were charged, that if they found Drysdale was guilty of no fraud in taking the deed to himself, as he did, or even if he became a trustee by reason of his fraud, if they found that his fraud was discovered by the party defrauded, or might have been discovered by reasonable diligence more than five years before 1871, the action could not be maintained, and the verdict should be for the defendants.

3. The jury were also instructed as follows:—

" The defendants also insist that they are protected by the general Statute of Limitations."

" The evidence tends to show, that when Messrs. Roberts bought the land, in 1846, they put Pardee and Fell immediately in possession, as their tenants, and that these tenants have continued in possession ever since. You have heard the evidence; what it proves is for you. It is not contradicted that these tenants sunk coal-shafts and slopes on the land, built railroads, coal-breakers, numerous houses, a saw-mill, and cut timber over the whole tract. Was this an adverse, exclusive, notorious, hostile, and continued possession for twenty-one years before the suit was brought? If it was, the plaintiff cannot recover: he is barred by the Statute of Limitations."

" It is true, no length of possession will protect a party against the entry or action of one in subordination to whom the possession has been held; and if the entry was in subordination to the title or right of another, the possession is presumed to be continued subordinate until notice of adverse claim is brought home to the holder of the paramount title. But I see no evidence that the defendants entered in subordination to any right of the plaintiff. When we speak of a subordinate title, we mean that the inferior title is in privity with another, as in case of a tenancy for years, life, at will, &c. There was no such entry in this case. The Messrs. Roberts put upon record, at the beginning, a deed declaring the entire interest to be in themselves; and there is no evidence that either they or their tenants, Pardee and Fell, ever acknowledged a superior right, or any right, in the plaintiff."

" It is also true, that the possession of one tenant in common

is generally regarded as the possession of his co-tenant until an ouster has taken place; and an ouster must be proved or presumed from facts in proof. It is argued on behalf of the plaintiff, that he was a tenant in common with the Messrs. Roberts in 1846, when they entered by their tenants. Certainly he was not of the legal estate; but if he was then a tenant in common with them, what is the legitimate effect of the evidence? It has been decided by the Supreme Court of this State, that, when one tenant in common enters on the whole and takes the profits, and claims the whole exclusively for twenty-one years, the jury ought to presume an ouster, though none be proved. 10 S. & R. 182; 9 Pa. St. 226; 13 S. & R. 356; 3 W. 77."

" The jury are, therefore, instructed that if they find from the evidence that the defendants entered upon the property in 1846, by themselves or their tenants, claiming it as their own exclusively, receiving its profits, and that they have maintained notorious, adverse, exclusive, hostile, and uninterrupted possession of the entire tract ever since, the verdict should be for the defendants."

4. The court also charged the jury that the plaintiff, claiming as he does as heir of his father, stands in no better situation than his father would stand in were he living and had this action been brought by him.

To each proposition of this charge in favor of the defendants the plaintiff excepted; and the question here is, whether it contained any error prejudicial to him. After giving due attention to the laws and judicial decisions of Pennsylvania, we are satisfied that the charge was as favorable to the plaintiff as could be asked. Each of its positions seems to be abundantly sustained by authority. A leading case on the first point is *Strimpfler* v. *Roberts* (18 Pa. St. 283), which adopts the general rule, that a resulting trust, resting in parol, is to be regarded as extinguished after the lapse of twenty-one years. This case has frequently been affirmed by subsequent cases cited in the defendants' brief. In *Fox* v. *Lyon* (33 id. 474), it is said: " In *Strimpfler* v. *Roberts*, it was decided, on great consideration, and reaffirmed in *Brock* v. *Savage* (31 id. 401), that where a warrant is issued to one person, and the purchase-money is paid by another, and the patent is afterwards taken out by the nominal

warrantee, the right of him who paid the purchase-money is gone, unless he takes possession of the land, or brings ejectment to recover it, within twenty-one years from the date of the warrant; and after that lapse of time he cannot recover, no matter how clearly he may be able to prove that the legal owner was, in the beginning, a trustee for him." And this decision was followed in the said case of *Fox* v. *Lyon*. It was also followed and reaffirmed in the subsequent cases of *Halsey* v. *Tate* (52 id. 311), and in *Lingenfelter* v. *Richey* (62 id. 123). In the latter case, it was claimed that a deed absolute on its face was nevertheless in trust. The court, following and relying on the cases of *Strimpfler* v. *Roberts*, and other cases to the same effect, with reference to the parties claiming the benefit of the said trust, said: " As they claimed title to the land against the express language of the deed, they were bound to show, by clear and satisfactory evidence, that there was a resulting trust in favor of Sparks, and that he had taken such possession of the land, or exercised such exclusive acts of ownership over it, within twenty-one years from the time the trust arose, as would prevent its extinguishment."

It is, therefore, an undoubted rule of law in Pennsylvania, that a resulting trust in land, if not sought to be enforced for a period of twenty-one years, and is not reaffirmed or continued, will, under ordinary circumstances, be extinguished. This rule is especially applicable where the party having the legal title has, during the required period of twenty-one years, been in notorious and adverse possession, paying the taxes and exercising all the usual rights of ownership, and his title has, for the whole period, been on record in the proper office. On this point, therefore, we think the charge was correct and unexceptionable.

We are also of opinion that the statute of 1856 and the general Statute of Limitations were applicable to the case upon the facts as submitted to the jury. As these points are fully explained in the charge itself, we deem it unnecessary to discuss them.

The fourth point needs no remark.

*Judgment affirmed.*