MINNIE H. VEEDER, Appellee, v. F. C. VEEDER et al., Appellees; D. L. VEEDER et al., Appellants.

**GIFTS:** Real Estate—Evidence. Parol evidence of a gift of real
1    estate must be clear, satisfactory, and convincing.

**ADVERSE POSSESSION:** Evidence—Weight and Sufficiency. A
2    plea of adverse possession is established by evidence that the
     claimant received a parol gift of the land, immediately entered
     into possession, so remained for over 30 years, paid the balance

due on the land and all costs of litigation pertaining thereto, and at all times exercised full acts of ownership.

*Appeal from Wright District Court.*—E. M. McCALL, Judge.

JUNE 27, 1918.

SUIT in equity for partition of real estate. The facts appear in the opinion.—*Modified and affirmed.*

*Birdsall, McGrath & Archerd,* for appellants.

*Berry & Hill, Ladd & Rogers, S. Flynn,* and *Nagle & Nagle,* for appellees.

STEVENS, J.—I. David Veeder died testate, in February, 1882. By his will he disposed of certain real estate not involved in this litigation. In addition to his widow, he was survived by several sons and daughters, all of whom, or their heirs at law, are parties to this suit. In June, 1878, David Veeder purchased by oral contract the NW¼ of the NE¼ of Section 4, Township 92, Range 23, Wright County, Iowa, containing 53 acres. This is the land in controversy. He paid $50 on the purchase price, which was $4.00 per acre, and immediately entered into possession thereof. In 1881, the party from whom he purchased the land sold it to another purchaser, who received an executor's deed therefor. David Veeder's will was executed August 14, 1881; and at this time a suit was pending in which he was plaintiff, asking specific performance of his contract of purchase. The suit was undetermined at the time of his death, and Frank Veeder, his son, was appointed, and qualified as, special administrator for the purpose of prosecuting the same, in which he ultimately prevailed.

Rachael A. Veeder also made a will, September 17, 1891. She died, December 12, 1892. The plaintiff, Minnie H. Veeder, and the defendants Frederick C. Veeder and Cora Sandrey claim title to the real estate in question, under the

will of Rachael A. Veeder. This tract of land is not specifically described in the will of either David Veeder or Rachael A. Veeder, but each of said wills contains a residuary clause. This clause of David Veeder's will is as follows:

"All the residue of my real estate; namely, the timber lot, the * * * grove of 5 acres, west half of the northeast quarter of the southwest quarter of the northwest quarter of Section 32, Township 92, Range 23; also the balance of my personal property, I bequeath the same to my wife, Rachael, for her benefit and use, and my daughters to share as she may direct, she relinquishing all right of dower thereto not mentioned."

The following is the clause of the will of Rachael A. Veeder:

"The residue of my real estate to be equally divided between my children, viz.: Frederick C. Veeder, Minnie H. Veeder and Cora R. Veeder, my personal effects at the final adjustment then on hand to be given to my son, Frederick C. Veeder."

Frank Veeder died intestate, April 1, 1916, without issue or wife surviving him. The claim of appellees is that the land in controversy passed, under the residuary clause of the will of David Veeder, to Rachael A. Veeder, and under the residuary clause of her will to them.

David Veeder, on the day he executed his will, suffered a slight stroke of paralysis. As his condition was believed to be critical, a scrivener was hastily summoned from a nearby town, and the will was prepared. Appellants claim that, shortly before the will was executed, David Veeder stated to Frank, in the presence of the entire family, that the land in controversy, if the litigation resulted favorably to him, was to be Frank's, and that he gave it to him, and that it was to be his. David L. Veeder, who, at the time, was 17 years of age, Hiram Veeder, who was 31, and John Lord, a

son-in-law, who was about the same age, all testified to the alleged parol gift. The plaintiff, Minnie Veeder, who was, at the time, 11 years of age, and Frederick C., who was about 8 or 9, both testified that they did not hear their father mention the subject of gift. No other testimony of what occurred upon this occasion was offered. William Veeder, who had been present, was deceased at the time of the trial. Frank Veeder was about 30 years of age, had always lived at home, and, to some extent at least, managed the father's affairs. The decree of the court below was in favor of the three claimants.

It is the contention of appellants that Frank Veeder immediately entered into possession of the land under the parol gift from his father, and continued in possession, control, and management thereof, receiving and appropriating the income therefrom to himself, until in May, 1896, when he became insane; and thereafter, a guardian managed and looked after the land until Frank's death, April 1, 1916. Shortly after the death of David Veeder, Frank was appointed special administrator of his estate for the purpose of prosecuting the suit for specific performance of the oral contract to convey the land to David Veeder. The litigation resulted in a decree for plaintiff; and, under the appointment of the court, a commissioner's deed, conveying the land to Frank, was executed and recorded. The granting clause of the deed designated Frank personally as grantee, and not as special administrator. Frank Veeder borrowed the money at a bank, upon a note signed by himself and by his brother Hiram as surety, and paid the balance of the purchase price for the land, amounting to something over $300, to the clerk of the district court. Presumably, Frank Veeder later paid this note, but there is no direct evidence to that effect. He also paid all of the expenses of the litigation. It is not claimed that he was reimbursed for any part of the sums expended by him.

In addition to the above, many circumstances are shown in evidence tending strongly to support appellants' claim that David Veeder made a parol gift of the land to Frank. All of his real estate, except that in controversy, was specifically disposed of by his will, the residuary clause of which devised "all the residue of my real estate, namely * * * ." This was followed by a description of the remaining real estate owned by him and not disposed of in the preceding paragraphs of his will. The will of Rachael A. Veeder made no reference to the 53-acre tract, and appellees' claim thereto is based upon the general language of the residuary clause. Rachael A. Veeder appears never to have asserted any claim to an interest in the land in controversy, nor to have demanded nor received any share of the income therefrom. There is some conflict in the evidence as to whether Frank had actual possession of the land before his father's death, but there would seem to be little room for doubt upon this question. A portion of the tract had been plowed, and Frank placed a portion of the remainder in cultivation. He fenced the land, at his own expense, paid the taxes, and exercised full dominion and control over the same until he became insane. He borrowed money from the school fund, securing the payment thereof by mortgage in his own name upon the land. He leased the same to one of his brothers, who paid him rent therefor; and, after his incarceration in the asylum, Frederick C. Veeder, one of the appellees herein, leased it of Frank's guardian, and paid rent therefor.

The plaintiff, in 1913, wrote a letter to her brother, David, in which she said, referring to the tract in question:

"But you know that was always supposed to be Frank's, or was it never put in Frank's name?"

On an occasion shortly after Frank's death, she and Frederick C. Veeder, at the home of Homer Lord, son of their deceased sister, made a list of Frank's property, in which they included the 53-acre tract. In her original petition in

this case, plaintiff alleged that Frank died intestate, seized thereof. William Veeder, who was first appointed Frank's guardian, took charge of the tract, leased the same, collected the rent, and made annual reports to the court, as such guardian. After his death, David Veeder was appointed, and also took charge of and leased the land, and made annual reports as guardian. No claim appears to have been asserted by appellees to said land adverse to Frank, except that, in 1895, Cora Sandrey filed a petition in the office of the clerk of the district court of Wright County, claiming to be the owner of an undivided one-third interest therein, as a residuary legatee under the will of Rachael A. Veeder. This petition was later dismissed, or the suit abandoned. In 1912, Louise Veeder, the surviving widow of William, and others also filed a petition involving the title to the disputed tract. The plaintiff herein filed answer in that suit, but the record does not disclose its import. She did, however, in answer to questions propounded by her counsel upon the trial of this case, state, as a conclusion, that she always asserted the claim now made by her.

That Frank claimed to be the absolute owner of the land is too apparent from the record to call for discussion. It is also satisfactorily shown that plaintiff and Frederick C. Veeder believed that he was the owner thereof, and this belief evidently was shared by all of the family. The statement in plaintiff's letter to David, above referred to, together with the memorandum made by herself and Frederick at the home of Homer Lord after Frank's death, will bear no other construction. That all of Frank's brothers and sisters would have permitted him to occupy the tract in question, claiming to be the owner thereof, and to receive the income and profits arising therefrom for more than 30 years, without protest, all the time knowing and believing that he possessed but a small undivided interest therein, is hardly credible. The only explanation offered of their silence and failure to

protest, or demand their share of the land, was that they
knew Frank was afflicted with some mental difficulty, and
they desired to avoid harassing or annoying him. This con-
tention, together with the claim now asserted,—that they un-
derstood he was holding possession and receiving the profits
as special administrator,—has many indications of an after-
thought. It is more probable that his appointment as special
administrator had been forgotten, and came to light after
the litigation began. The plaintiff certainly did not believe
that she was the owner of an undivided one-third interest in
the land when she filed her petition in which it was alleged
that Frank died seized thereof.

We have read the entire record with great care, and are
led irresistibly to the conclusion that David Veeder made a
parol gift of the land to Frank; that Frank entered into pos-
session thereof immediately thereafter; and
that, during all of the time since the death of
David, all of the parties hereto have under-
stood that the land belonged to Frank, treated it as his, and
fully acquiesced in his claim thereto. It is true that evi-
dence to establish a parol gift must be clear, satisfactory,
and convincing. *Bevington v. Bevington,* 133 Iowa 351, 358;
*Sires v. Melvin,* 135 Iowa 460; *Albright v. Albright,* 153
Iowa 397. The evidence seems to us to quite conclusively
sustain appellants' claim of an executed parol gift of the
land to Frank by his father.

1. GIFTS: real
   estate: evi-
   dence.

II. Appellants rely also upon laches and adverse pos-
session. The answer of counsel for appellees to this con-
tention is that Frank Veeder was in possession of the land,
after and by virtue of the deed to him as
special administrator, and, therefore, held
title thereto in trust only; that he at no
time repudiated the trust; and that the
statute of limitations did not run in his favor. In view of
the conclusion before announced, it will not be profitable to

2. ADVERSE POS-
   SESSION: evi-
   dence: weight
   and suffi-
   ciency.

enter upon an extensive discussion of the questions here pre-
sented.   As before stated, Frank Veeder took possession of
the land before his father's death, occupied and cultivated
the same, and received and appropriated the income there-
from to his own use, until his incarceration in the asylum;
and thereafter, his guardians, who were his brothers, con-
tinued to account therefor as his property.   The payment by
him of all of the purchase price, except $50, and of the ex-
penses of litigating the suit for specific performance, to-
gether with the fact that he secured a loan by mortgage
thereon in his own name, and the other facts and circum-
stances shown in the record, clearly evince his intention,
from the start, to assert title in himself.   The conduct on
the part of at least two of the residuary legatees under the
will of Rachael A. Veeder tends strongly to show complete
acquiescence on their part in Frank's claim of ownership.
Indeed, Rachael A. Veeder and all of his brothers and sisters
appear to have understood and believed that Frank was the
owner of the land, and treated him as such.   No disposition
appears to have manifested itself, on the part of the lit-
igants, to insist upon the trust claimed to have been created
by the commissioner's deed, or to assert any right or claim
thereunder.   Acquiescence in Frank's possession and claim
of ownership is shown upon the part of all for more than 25
years.   It is true, he was never discharged as special admin-
istrator; but it is also true that he never made a report as
such, and never in any other way attempted to carry out a
trust.   William Veeder was present at the time David Vee-
der gave the land to Frank, but was deceased at the time this
suit was commenced.   Frank Veeder would have been a com-
petent witness for himself, as to some matters relied upon
by appellees in this case.   The record does not disclose that
Rachael A. Veeder, at any time, claimed an interest in the
land; but she also appears to have fully acquiesced in
Frank's claim.   Had suit been brought before her death, she

also would have been a competent witness as to some material matters. Frank was prosperous, and died seized of 160 acres acquired by him after his father's death. It is not claimed, on the part of appellees, that they refrained from asserting an interest in the land because of Frank's necessities, but only that to have done so would have irritated him, and possibly hastened his final mental collapse, which occurred several years before his death. Cross-petitioner's plea of adverse possession and laches appears to us to be sustained by the evidence. As bearing upon this question, we cite the following: *Casey v. Casey*, 107 Iowa 192; *McBride v. Caldwell*, 142 Iowa 228; *Blackett v. Ziegler*, 147 Iowa 167; *Hanson v. Gallagher*, 154 Iowa 192; *Whitney v. Fox*, 166 U. S. 637 (41 L. Ed. 1145) ; *Hammond v. Hopkins*, 143 U. S. 224 (36 L. Ed. 134) ; *Philippi v. Philippi*, 115 U. S. 151 (29 L. Ed. 336) ; *Midmer v. Midmer's Exrs.*, 26 N. J. Eq. 299, 304; *King v. Pardee*, 96 U. S. 90 (24 L. Ed. 666).

All of the parties hereto are heirs at law of Frank Veeder, and entitled to have their proper interest determined in this suit. As indicated, the decree of the court below was in favor of appellees, whereas the same should have found and adjudicated the interest of each of the parties as heirs at law of Frank Veeder. The decree must, therefore, be modified in harmony with this opinion. The cause is, therefore, remanded to the court below for finding and decree in accordance herewith; or, if desired, a decree may be entered in this court. The costs in this court will be taxed to appellees.—*Modified and affirmed.*

PRESTON, C. J., WEAVER and GAYNOR, JJ., concur.