Nov. Term,
1856.
————
MEEK
v.
SPENCER.

MEEK *v.* SPENCER and Another, Administrators.

Secondary evidence of the contents of a writing will not be admitted, unless it is proved that a *bona fide* and diligent search has been unsuccessfully made for the lost instrument, in the place where it was most likely to be found.

Under the R. S. of 1843, the sale bill filed by an administrator in the office of the clerk of the Probate Court, is the best evidence of the sale.

Corn standing in the field was sold at administrator's sale. It was to be gathered by the administrator, and stored upon the premises within a reasonable time. When it was gathered and stored, the purchaser refused to receive it. The administrator afterwards obtained an order from the Probate Court to sell it at private sale. He sold it for a sum less than the first purchaser had bid for it, and sued him for the difference.

*Held,* that on the trial, the proceedings relative to the second sale were admissible in evidence.

*Held,* also, that the administrator did not, by procuring the order for a private sale, abandon the contract with the first purchaser.

*Held,* also, that whether the corn was gathered and stored within a reasonable time, or not, was a question for the jury.

*Wednesday, November 26.*

APPEAL from the *Jennings* Circuit Court.

DAVISON, J.—This was assumpsit, instituted under the old system of procedure, by *Spencer* and *McCurry,* administrators of *John McCurry,* deceased, against *William Meek.* The declaration alleges that in *October,* 1851, the administrators sold to *Meek,* at public auction, a quantity of corn, then standing and growing on the farm owned by the decedent at his death, which corn was to be gathered by them and stored upon the premises within a reasonable time after the sale; that *Meek* bid off the corn as follows: 250 bushels at 31 cents, and the residue, alleged to be 984 bushels, at 32 cents per bushel—which being computed makes the aggregate amount of 394 dollars; and that the sale was on a credit of six months, the purchaser giving his note with security, &c. It is averred that the corn was gathered within a reasonable time, and notice thereof given to *Meek,* who refused to accept it; and that by reason of such refusal, the admin-

istrators were compelled to, and actually did, sell it for 265 dollars. The object of this suit is to recover the difference between the two sales. There was a verdict in favor of the plaintiffs for 50 dollars, and, over a motion for a new trial, judgment on the verdict.

Nov. Term, 1856.

MEEK
v.
SPENCER.

During the trial, the plaintiffs introduced *George W. Swortout,* who testified that he was clerk of the above sale; that as each article was sold he entered the name of the buyer, the article sold, and the amount bid, on a paper which he had for that purpose—which paper, though its heading contained the terms of sale, was intended merely as a rough memorandum, and designed to aid witness in making out a complete sale bill; that about two weeks afterwards, he made out a regular sale bill which contained the entries made on the memorandum,—which bill was sworn to by witness and filed in the clerk's office of the Probate Court,—and that since the making of said bill, he has not seen the memorandum, but believes he left it with the plaintiffs. Thereupon the affidavit of *Spencer,* one of the plaintiffs, was read, wherein he states that the memorandum was left in the hands of *Swortout,* the clerk of the sale, for the purpose of making out a sale bill; that affiant has not since had the same in his custody; that he has made diligent inquiry to find it, but in that he has failed; and that he verily believes that it is lost or destroyed. Upon this preliminary evidence the plaintiffs, to prove the sale of the corn to the defendant, produced from the files of the clerk's office the aforesaid bill of sale and offered it in evidence to the jury, and, over the defendant's objection, it was admitted. This ruling is assigned for error.

The loss of the memorandum is not, in our opinion, sufficiently proved to authorize secondary evidence of its contents. As a general rule, a party is not allowed to produce such evidence until a *bona fide* and diligent search has been unsuccessfully made for the lost instrument, in the place where it is most likely to be found. 1 Greenl. Ev. s. 558.—4 Blackf. 2, note 1. Here, the clerk of the sale states his belief that he left the memo-

randum with the plaintiffs, one of whom swears that it was left with the clerk. It was no doubt at one time in his hands; but the record is silent as to whether he has searched for it in accordance with the above rule. And for aught that appears, a *bona fide* and diligent search made by him would have been successful.

We are, however, referred to an act in force when this suit was instituted, which provides that an account of sales made by the administrator shall be kept by a clerk not interested, &c.; "and such account shall specify the time and place and conditions of sale, the different articles sold, and by whom purchased, &c.; which account, sworn to and subscribed by such clerk, shall be filed by such administrator in the office of the clerk of the proper Probate Court to be preserved as evidence of the sales of property therein specified." R. S. 1843, p. 518. This, it is insisted, makes the sale bill the best evidence of the sale; and we are inclined to that opinion. The language of the enactment is sufficiently explicit and broad enough to cover every case in which it is incumbent on an administrator to prove a sale made by him of his intestate's property. It follows that the sale bill was admissible without the preliminary evidence.

After the plaintiffs had gathered and measured the corn, and *Meek* had refused to receive it, they obtained an order from the Probate Court authorizing them to sell it at private sale, which they accordingly did, for the price of 265 dollars, and made report thereof to the Court. All the proceedings relative to this sale were offered in evidence to the jury, and, over the defendant's objection, admitted. If a resale of the corn was at all allowable, the ruling of the Court was not erroneous; because the action of the administrators, though it was under the order of the Court, could in no way injure the defendant. But it is said the plaintiffs, by applying for and procuring the order to sell the corn at private sale, abandoned the contract with *Meek*. This position, in effect, concedes their right to sell, and assumes that the sale having been private, operated as a waiver of the

original contract between the parties. But why should a private sale produce such a result? Assuming that the plaintiffs have fully complied with their contract, and that the defendant's default compelled them to resell the corn, it is not for him to say whether such resale should have been public or private, provided it was sold at its fair value at the time of sale; and whether it was or not was a question for the jury. The evidence shows that the corn was sold to the defendant on the 15th of *October*, 1851; that it was all gathered by the 15th of *January*, 1852, and about the last of that month he was notified of its readiness for delivery, when he declined taking it, alleging that by doing so he would lose too much, and proposed a compromise. He did not, however, object to the notice. In relation to these proofs, it is insisted that the corn was not gathered, nor was the defendant notified of its readiness for him, within a reasonable time. This position involves a question which, under the circumstances of the case, was for the jury to decide. It was for them to say whether the corn was gathered and the defendant notified within a reasonable time. They have decided the question, and, in view of the evidence, we are not inclined to disturb their conclusions.

*Per Curiam.*—The judgment is affirmed with 10 per cent. damages and costs.

*H. C. Newcomb*, for the appellant.

*J. W. Gordon*, for the appellees.