# WHITNEY v. FOX.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 68. Argued March 3, 5, 1897. — Decided April 19, 1897.

It is the ordinary rule to accept the interpretation given to a statute by the courts of the country by which it was originally adopted; but the rule is not an absolute one to be followed under all circumstances. In this case the court accepts the construction given by the Supreme Court of the Territory of Utah to a statute of that Territory disqualifying certain persons as witnesses, rather than the construction placed upon a like statute by the Supreme Court of California, although the Utah statute was apparently taken from the statute of California.

Equity will sometimes refuse relief where a shorter time than that prescribed by the statute of limitations has elapsed without suit. It ought always to do so where, as in this case, the delay in the assertion of rights is not adequately explained, and such circumstances have intervened in the condition of the adverse party as to render it unjust to him or to his estate that a court of equity should assist the plaintiff. In this case the plaintiff, seeking the aid of equity, forbore for an unreasonably long time

to assert his rights, and made no demand upon his adversary until disease had so far deprived the latter of his reason and faculties that he could not comprehend any matter of business submitted to him. His right to ask the aid of a court of equity was held to have been lost under the peculiar circumstances of the case. '

THIS is an appeal from a judgment of the Supreme Court of the Territory of Utah, affirming a judgment in favor of the defendant in an action brought in the year 1889 in the District Court of the Third District of that Territory by the appellant Whitney against the executors of Joab Lawrence, deceased.

The object of the suit was to establish the existence of a trust in his favor in certain real estate and stock, and to have an accounting in respect of the accumulations or profits of such property.

The case made by the findings of fact is substantially as follows:

On and prior to October 7, 1872, the plaintiff was the owner of 250 shares, and Joab Lawrence, deceased, was the owner of more than 1500 shares, of the capital stock of the Eureka Mining Company of Utah. Prior to that date the plaintiff delivered to Lawrence certificates representing his 250 shares of stock, to be disposed of by Lawrence. together with the latter's own stock for their joint benefit.

At the above date Lawrence sold and disposed of to E. B. Ward of Detroit 1500 shares of his own stock and the plaintiff's 250 shares, together with 250 shares belonging to W. H. Wood. In part consideration for the sale, Lawrence received real estate in Detroit consisting of three city lots, and a building thereon, commonly known as the Mansion House, and took a deed therefor in his individual name. He also received in consideration of such sale a large amount of cash in hand, besides other property. Of the cash so received, $23,587.50 was applied by him in taking up an indebtedness against the Eureka Mining Company. The plaintiff being the owner of one eighth of the total number of shares of stock sold to Ward by Lawrence, the latter received the above real estate and the $23,587.50 in trust for the plaintiff to the extent of an undivided one eighth interest. The balance of the consideration received

by Lawrence from the sale of the stock was distributed imme-
diately after such sale among himself, plaintiff and Wood,
according to their respective interests.

In recognition of the above trust Lawrence executed and
delivered to the plaintiff the declaration of trust described in
the complaint, which was in these words:

"SALT LAKE CITY, *Nov. 9th,* 1872.

" J. N. WHITNEY:

" This is to certify that you are entitled to one-eighth interest
in the real estate, mining and rolling-mill stocks, and in the
$23,587.50 of which the Eureka Mining Company of Utah are
indebted to me, of the property acquired by me of E. B. Ward,
of Detroit, Michigan, October 7th, less the farm of 160 acres,
which was given to A. A. Griffith. I have also received of
you 20 shares of Eureka stock, your one-eighth of the 160
shares which was given to Messrs. Griffith and Mayhue.

" JOAB LAWRENCE."

On November 9, 1872, the Eureka Mining Company of Utah
executed to Theodore M. Tracy, trustee, a mortgage to secure
the payment of $43,587.50, Tracy taking and holding the
mortgage as trustee for Lawrence, $23,587.50 of that sum
representing the indebtedness of the Eureka Mining Company
of Utah taken up by Lawrence, as above stated, with a portion
of the proceeds of the sale of stock made to Ward, the remain-
ing $20,000 representing an indebtedness due from the Eureka
Mining Company of Utah to Lawrence individually. The
mortgage was not to secure in whole or in part any indebted-
ness due from the company to the plaintiff or to Wood on
account of services rendered by them or either of them to it.
Afterwards, and prior to August 26, 1874, the mortgage was
assigned by Tracy to Lawrence.

Subsequently Lawrence instituted proceedings to foreclose
the mortgage, and did foreclose the equity of redemption on
the property therein described, which included the mining
property of the Eureka Mining Company of Utah. The
decree of foreclosure was entered on July 27, 1876, and there-

after a deed of the property was duly executed to Lawrence by the United States marshal.

At the time of the foreclosure a new corporation, called the Eureka Hill Mining Company, with a capital stock of 10,000 shares, had been organized under and by virtue of the laws of the Territory of Utah, and had succeeded to the Eureka Mining Company of Utah.

On March 13, 1877, Lawrence sold and conveyed to the Eureka Hill Mining Company all his right, title and interest in and to the premises and all that he had acquired under the above mortgage and foreclosure, and in part consideration therefor received 30 per cent of the capital stock of that company, amounting to 3000 shares. He took these shares in his own name individually, and so held and retained them until his death, which took place December 28, 1888, claiming and receiving the dividends thereon, and in all respects holding and treating both the stock and dividends as his own property; nor did he at any time recognize any right or interest of the plaintiff in and to the same. The amount of dividends received on the stock at the commencement of this action amounted to $94 per share, and at the time of the hearing of the case to $124 per share.

On September 27, 1875, Lawrence wrote to Wood the following letter:

"WM. H. WOOD, Esq. — Dear Sir: I am in receipt of yours. Hempstead advises me that the foreclosure suit will come up probably in October term, say about the last of the month. Your interest in the mortgage is one-eighth of $25,000, $3125. The administrators in the Ward estate have given Mr. Romeyn notice of the intention to amend their complaint, notwithstanding the demurrer to the complaint was sustained and the injunction was removed as against me. I have been spending a great deal of money and time in endeavoring to protect the Detroit property. I now intend going to Salt Lake early in the month. I wish you would at once inform me when you will probably be ready to go West, or will be in Salt Lake.

"Yours, &c.,     JOAB LAWRENCE."

And on December 26, 1875, Lawrence also wrote Wood as follows:

" Mr. Romeyn informs me under date of the 16th inst. that the suit of Ward against Lawrence, Whitney and Wood has been discontinued, the receiver discharged and the property placed in my possession. The entire rents have been used up, only $317 to balance, which was paid to Romeyn.

" Yours, &c.,      LAWRENCE."

After December 26, 1875, and until April 6, 1888, the plaintiff at no time claimed or demanded of Lawrence any portion of the mortgage property or its proceeds, or any dividends received upon it, and Lawrence never recognized or admitted that he had any interest in the same.

On July 18, 1876, Wood wrote the plaintiff a letter, in which, among other things, he said: " When in Boston I go to the ' Silver Islet' office, and found the reports from the mine good, but no sales of any account. I will keep you posted on it, and if a chance does come will get you out and myself. I met Hill (of the Winnemucca) in Phil'd. How are things in Utah? and does Lawrence and you get along? You know you and myself have about $17,000 of our money in the mortgage, beside our portion of the Detroit R. E., and if necessary, have some money left to present my claim in court for a fair and honest adjustment. It seems to me that we should commence and claim our rights very soon, by suit, if in no other way — all I wish is what is justly due me."

On March 1, 1880, Wood also wrote Whitney as follows:

" SAN FRANCISCO, *March* 1, 1880.

" MR. JOHN N. WHITNEY.

" Dear Sir: Yours came to hand some time since and fully noted. What course is the best to take with Lawrence to bring him to a settlement? Will the law work in this case this late day? Our claim may be good upon the Eureka in case he should wish to sell, as I have his letter saying I was interested one-eighth in the mortgage and in the Detroit prop-

erty. I think it is time something should be done, and done promptly and fearlessly, and a full exposure made if necessary. I am satisfied the mine cannot be sold if our claim is put in the right shape. I think any one can see it and think we can claim our portion of his receipts in law. Drop me a line at once, as I now intend to start for the East and home in about two weeks, and shall stop at Salt Lake City if it may be best; find out what he intends to do. I mean Lawrence. No other way but to take the bull by the horns; I fear him not. I have closed in one to-day and he gave down his milk and came to time.

"Yours in haste,                    WM. H. WOOD."

This letter was received by Whitney in due course of mail, and was produced by him at the trial in pursuance of a notice. The plaintiff had actual knowledge of the conveyance to the Eureka Hill Mining Company at the time it was made, as well as of the terms on which it was made, and knew as early as March, 1880, that Lawrence denied and repudiated any alleged interest or claim of his in or to any part of the 3000 shares of stock, or in the dividends that had been declared and paid upon such stock, or in any of the property mentioned in the complaint. Lawrence had received in part consideration of the conveyance to the Eureka Hill Mining Company, under date of March 13, 1877, in addition to the 3000 shares of stock, a quartz mill, and as early as the summer of 1877 the plaintiff knew that he had sold and disposed of the machinery of the mill, and was informed of the sale by Lawrence in person, but plaintiff did not then nor afterwards make any demand upon Lawrence or his representatives for any part or portion of the proceeds of that sale, nor make any inquiry as to the amount realized by him therefrom, although ignorant of its terms.

As early as 1881 the plaintiff knew that the Eureka Hill Mining Company had declared and paid a dividend of one dollar per share upon all of its capital stock, and as early as November, 1885, he had actual knowledge that that company had theretofore declared and paid dividends upon its capital stock aggregating $54 per share, and that Lawrence had received

in dividends that amount per share on each and all of the 3000 shares of stock; but he never at any time prior to April 6, 1888, made any demand upon or request of Lawrence for any part or portion of the proceeds of such dividend.

From April, 1877, until some time in 1885 Lawrence resided in Salt Lake City continuously, and was rarely absent therefrom, and when absent it was only for brief periods. He returned to that city in October, 1885, and remained there until February 10, 1886. On November 1, 1886, he returned again, remaining continuously in the city until January 25, 1887. Almost weekly during the years 1877, 1878, 1879, 1880, 1881 and 1882 the plaintiff met Lawrence in that city and conversed with him, and also met him there frequently in 1883 and 1884; and in November or December, 1885, after he had received actual knowledge of the receipt by Lawrence of the dividend of $54 per share on the 3000 shares of stock, he met and conversed with Lawrence in Salt Lake City, but made no demand on or request of him for any part of such dividend.

During the latter part of the year 1887 the mind and memory of Lawrence became so impaired by disease that it was not possible for him to attend to ordinary business matters, and from that time to his death this impairment of his faculties daily increased, so that from the first of the year 1888 until his decease he was unable to comprehend any matter of business submitted to him.

On April 6, 1888, the plaintiff, knowing that for many months prior to that date Lawrence had been deprived of his reason and mental faculties, made for the first time a formal demand on him for an accounting as to his alleged interest in the stock, real estate and rents described in his complaint.

As conclusions of law from the foregoing facts the court found and decided:

That Lawrence was at the time of his death the owner, free from any and all trusts in favor of the plaintiff, of the property, both real and personal, described in the complaint;

That so far as it was sought to establish a trust in favor of the plaintiff in the real estate mentioned in the complaint, and to obtain an accounting of the rents, issues and profits thereof,

the cause of action was barred by the provisions of section 180 of the Code of Civil Procedure of Utah,Territory;

That the action, so far as it sought to establish a trust in favor of plaintiff in any portion of the 3000 shares of the capital stock of the Eureka Hill Mining Company, and to obtain a judgment decreeing plaintiff to be the equitable owner of part of those shares, or to any portions of the dividends declared and paid thereon, was barred by the provisions of section 201 of the Code of Civil Procedure of Utah Territory;

That the plaintiff had by his laches and inexcusable neglect and delay barred and precluded himself of and from any relief; and

That the plaintiff should have or take nothing by his suit, and the defendants should have and recover of and from the plaintiff their costs to be taxed.

In accordance with these conclusions of law, it was adjudged that the plaintiff take nothing by his suit.

*Mr. Arthur Brown* for appellant. *Mr. J. G. Sutherland* was on his brief.

*Mr. Jeremiah M. Wilson*, for appellee. *Mr. A. A. Hoehling, Jr.*, was on his brief.

MR. JUSTICE HARLAN, after stating the facts, delivered the opinion of the court.

At the hearing of this cause in the inferior territorial court, the first testimony offered in plaintiff's behalf was his own deposition, taken in a suit in the Supreme Court of New York, wherein he and Wood were plaintiffs and Joab Lawrence, then living, was the defendant — that case being substantially for the same cause of action presented in this case. The court ruled that Whitney's deposition could not be received except for the purpose of impeaching him, nor was his evidence in the former action admissible, he being present in court and orally testifying in this suit. This action of the court is

assigned for error. But as the deposition was not made a part of and is not in the record, we cannot say that its exclusion was prejudicial to the rights of the plaintiff. Amendment of 21st Rule, 14 Wall. xii; *Buckstaff* v. *Russell*, 151 U. S. 626, 636 ; *Shauer* v. *Alterton*, 151 U. S. 607.

Whitney testified in this action on his own behalf, but the court ruled that his testimony as to any matter of fact occurring before the death of Lawrence and equally within the knowledge of both could not be received in his own behalf. Was this error? Among those who are disqualified by the statutes of Utah from being witnesses are " parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator upon a claim or demand against the estate of a deceased person, as to any matter of fact occurring before the death of such deceased person, and equally within the knowledge of both the witness and the deceased person." 2 Compiled Laws, Utah, 1888, Title X, c. 2, p. 427. The Supreme Court of Utah held that, under this statute, Whitney was incompetent to testify as to any fact equally within the knowledge of himself and Lawrence. It is said that the Utah statute was copied substantially from a statute of California, which declared incompetent as witnesses, " parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against an executor or administrator, upon a claim or demand against the estate of a deceased person as to any matter of fact occurring before the death of such deceased person." Deering's Code Civ. Proced. § 1880. The contention is that the interpretation placed by the Supreme Court of California upon the statute of that State should be followed in this case. We are referred to *Myers* v. *Reinstein*, 67 California, 89, in which case the plaintiff sought a decree establishing a trust in his favor in a certain piece of land. The alleged trustee was dead when the case was heard. The court said : " We are of opinion that the witness was competent. The action was not on a claim or demand against the estate of Reinstein. The plaintiff asserted that the interest in the land sued for constituted no part of

Reinstein's estate, but was held in trust by Reinstein for Collins or his assigns, and after his death by the defendants, his devisees and successors. The defendants asserted that no such trust existed, but that Reinstein, their devisor, held the lands as his own estate, and that they had succeeded to his right. The very question to be determined here was whether the interest sought to be recovered was a part of Reinstein's estate or not. If it was a part of his estate, then no trust existed; he held it in trust in his lifetime, and the interest passed to his successors to the legal title, clothed with the trust. To hold that the claim or demand here attempted to be enforced was a part of the estate, and thus render the witness incompetent, would be to determine in advance the very question to be determined on the trial of the action. By so holding we would assume the very question to be tried and settled by the contestation between the parties. This we are not allowed to do."

The Supreme Court of Utah evidently entertained a different view of the Utah statute; for the claim asserted by Whitney in this case was, in the judgment of that court, "not only a claim against an estate, but one for many thousands." The relief sought was a decree declaring Whitney to be the equitable owner of one eighth of the Mansion House in Detroit, and entitled to the rents, issues and profits thereof, as well as to part of the 3000 shares of the stock of the Eureka Hill Mining Company, and the dividends that had theretofore been declared thereon; and that the executors of Lawrence be required, not only to account to the plaintiff for all of the said rents, issues, profits and dividends, but to convey to him an undivided one eighth interest in the real property, and assign to him a like proportion of such stock. It was also asked that a receiver be appointed to receive the dividends on the stock, and the rents, issues and profits of the realty. We cannot doubt that the claims asserted in this suit by Whitney are, within the meaning of the Utah statute, claims or demands against the estate of a deceased person, and, consequently, Lawrence being dead, Whitney was incompetent to testify to any fact touching said claims or demands that occurred be-

fore Lawrence's death, and were equally within the knowledge of both Whitney and Lawrence. The Supreme Court of Utah properly rejected the suggestion that such claim or demand was not against the estate of Lawrence. To say that the only issue here was whether the real property and stock described in the petition constituted a part of Lawrence's estate, and that no claim or demand was asserted against the estate, would be to defeat what, it seems to us, was the manifest object of the statute. While, as said by this court in *Coulam* v. *Doull*, 133 U. S. 216, 233, it is the ordinary rule to accept the interpretation given to a statute by the courts of the country by which it was originally adopted, the rule is not an absolute one, to be followed under all circumstances. We concur in the interpretation placed upon the Utah statute by the Supreme Court of Utah, as one required by the obvious meaning of its provisions, and we do not feel obliged, by the above rule, to reject that interpretation because apparently the highest court of the State from which the statute was taken has, in a single decision, taken a different view. We, therefore, hold that to the extent indicated by the court below Whitney was an incompetent witness as to any fact occurring before the death of Lawrence and equally within the knowledge of both.

It remains to inquire whether the judgment was right upon the merits. The Supreme Court of the Territory held that the suit was barred upon the grounds both of laches and of the statute of limitations of Utah. The undisputed facts make a case of such gross laches upon the part of Whitney as to forfeit all right to the aid of a court of equity. Equity will sometimes refuse relief where a shorter time than that prescribed by the statute of limitations has elapsed without suit. It ought always to do so where, as in this case, the delay in the assertion of rights is not adequately explained, and such circumstances have intervened in the condition of the adverse party as render it unjust to him or to his estate that a court of equity should assist the plaintiff. It is impossible to doubt that Whitney knew, for many years, while Lawrence was in proper mental condition, that the latter did not admit,

but denied, that the former had any just demand against him. But Whitney forbore to assert the rights which he now asserts, and although having abundant opportunity to do so, and having, if his present claims are just, every reason for promptness and diligence, he nevertheless slept upon his rights and made no demand upon Lawrence until disease had so far deprived the latter of his reason and faculties that he could not sufficiently comprehend any matter of business submitted to him. Under the peculiar circumstances of this case, the court below rightly held that the plaintiff's laches cut him off from any relief in equity. *Badger* v. *Badger*, 2 Wall. 87, 95; *Hayward* v. *National Bank*, 96 U. S. 611, 617; *Godden* v. *Kimmell*, 99 U. S. 201; *Landsdale* v. *Smith*, 106 U. S. 391; *Speidel* v. *Henrici*, 120 U. S. 377; *Richards* v. *Mackall*, 124 U. S. 183, 188; *Mackall* v. *Casilear*, 137 U. S. 556, 566; *Hammond* v. *Hopkins*, 143 U. S. 224, 250, 274. In this view, it is unnecessary to consider whether the plaintiff's causes of action were barred by the statute of limitation.

The judgment is _____ . *Affirmed.*

The case of *Wood* v. *Fox, Surviving Executor of Lawrence*, No. 56, on appeal from the Supreme Court of the Territory of Utah, was argued with No. 68 by the same counsel, and depends upon the same facts as appear in the above case, and for the reasons stated in the opinion in that case the judgment is

*Affirmed.*