P. H. Peterson, Administrator, Appellant, v. The Citizens
State Bank of Hopkinton, Appellee.

No. 45041.

March 5, 1940.

Rehearing Denied June 20, 1940.

Bronson & Ellis, for appellant.

Kenline, Roedell & Hoffmann and H. Reynolds, for appellee.

STIGER, J.—E. J. Kreumpel, who commenced this suit against defendant, died prior to the trial and P. H. Peterson, administrator of his estate, was substituted as plaintiff.

The controlling question before us is whether the delivery of a check by plaintiff's intestate, E. J. Kreumpel, at defendant bank to the bank's assistant cashier constituted, as claimed by the plaintiff, a transaction with the bank, or as claimed by the bank, was a personal transaction between Kreumpel and the cashier. Plaintiff's evidence is substantially as follows:

Plaintiff's intestate was a farmer and dealer in livestock who resided near Greeley, Iowa. The defendant, Citizens State Bank of Hopkinton, Iowa, operated a branch bank at Greeley. M. J. Gaughen, an assistant cashier, was in charge of said bank. Prior to September 10, 1935, Kreumpel had executed two mortgages on his livestock to the bank to secure his indebtedness which was in the sum of about $5,000. On September 10, 1935, Kreumpel sold livestock covered by the chattel mortgages of the bank to Link Livestock Company of Dyersville, Iowa, for the sum of $1,896.20. At the direction of Kreumpel the check issued in payment for the stock was made payable to the bank. Kreumpel took the check to the bank on September 12th and delivered it to Gaughen. The check was endorsed to the Merchants National Bank of Cedar Rapids, Iowa, by "Citizens State Bank, Hopkinton, Iowa, by M. J. Gaughen, assistant cashier in charge." The check was paid and defendant bank was credited by the Cedar Rapids bank with the said sum of $1,896.20. Plaintiff introduced in evidence a mutilated deposit slip of the Citizens State Bank issued by M. J. Gaughen as assistant cashier for $1,896.20 dated September 12, 1935.

On September 13, 1935, Gaughen deposited the amount of

the check in his personal account in the branch bank. On September 19, 1935, the E. J. Kreumpel notes and mortgages were sold by defendant bank to the Community Savings Bank of Edgewood, Iowa, for their face value plus accrued interest. Plaintiff, whose middle name was John, kept his account in the name of John Kreumpel. At that time he had a nephew 18 years of age named John Kreumpel who lived near Greeley. Plaintiff's evidence is undisputed.

When Kreumpel sold the mortgaged property, the notes were past due and he was heavily involved financially.

Mr. Wilson, a resident of Manchester, Iowa, for 24 years, a former banker and now engaged in farm management and the writing of general insurance, testified he made a trip to the defendant bank in June 1937 to see Mr. Wright, cashier of defendant bank, about an adjustment of the controversy. Mr. Wright told him that the bank was not inclined to give any credit in order to adjust Kreumpel's account and if Kreumpel "makes too much publicity about this, it would be too bad for him."

Defendant took the deposition of its main witness, M. J. Gaughen. From 1933 to September 1935, Gaughen was assistant cashier of defendant bank at Greeley. From 1935 to 1937, he was cashier of the Community Savings Bank of Edgewood, Iowa. In December 1937 he was convicted for embezzlement in federal court and sentenced. At the present time he is a salesman employed by the Hammond Liquor Company. He admits he expropriated the money but asserts Kreumpel was a party to the offense. We will set out the material part of his testimony.

He testified that he became acquainted with Kreumpel in 1932 and that in 1933 they carried on a livestock business under a partnership arrangement which terminated in 1937. The witness was a silent partner. A part of the partnership funds was deposited in the branch bank in the name of John Kreumpel, the witness not wanting to appear openly in the partnership because he did not want the officers of the bank to know that he was interested in a partnership which operated on funds

borrowed from the bank and because Kreumpel had several judgments against him. The remaining funds were kept in one of the deposit boxes of the bank which was not registered in any name. Gaughen also used this account for some of his personal funds and he and Kreumpel would draw on this so-called partnership account and sometimes for their personal use. Neither Kreumpel nor Gaughen told the officers of the bank of the partnership. The witness claimed the notes and mortgages executed by Kreumpel, which are described above, were partnership transactions and that the livestock sold to Link Livestock Company was partnership property and he was entitled to a one-half interest in the proceeds. He testified that on two occasions livestock which was mortgaged to the bank by Kreumpel was sold in his (Gaughen's) name to Rath Packing Company of Waterloo, Iowa, and the two checks given in payment were made payable to him, the proceeds being placed in the partnership account. At intervals, the partners would have an accounting and determine how much each owed the partnership account. The livestock was kept on Kreumpel's farm. Gaughen's testimony about the partnership is material only as it may tend to support his version of the delivery of the check to him by Kreumpel which is as follows:

"The livestock for which such check or draft was issued in payment belonged to E. J. Kreumpel and myself jointly and it was made payable to the Citizens State Bank because the bank had a mortgage on the livestock. E. J. Kreumpel brought the draft to me, probably the same day it was issued. I told Kreumpel I was in need of some money for my personal use for the purchasing of some stock in a bank, which I was attempting to place in Edgewood, Iowa. Kreumpel stated that it was all right with him for me to use those funds. The proceeds of this draft or check of the Link Livestock Company, I credited to my personal checking account. At least $1,050.00 of the proceeds of said draft was repaid by me to the partnership account carried in the name of John Kreumpel on October 3, 1935, by me placing $1,050.00 to the credit of John Kreumpel.

This sum was money paid to me by individuals who purchased stock in the Community Savings Bank from me. I identify Defendant's Exhibit 3 to be a duplicate deposit ticket showing the $1,050.00 credited to the John Kreumpel account.

"When E. J. Kreumpel delivered the check or draft of the Link Livestock Company to me, he did not give me any instructions to apply the same to the reduction of his indebtedness owing to the Citizens State Bank. I did not accept and receive this check or draft on behalf of the Citizen's State Bank. I accepted it in my own personal capacity as Kreumpel's partner in our livestock venture.

"There was an accounting of the partnership affairs had between E. J. Kreumpel and myself on October 10, 1936, in the back room of the Community Savings Bank in Edgewood, Iowa, and this particular accounting was the last one had. I identify defendant's Exhibit 4 to be a duplicate carbon copy of the accounting we had on October 10, 1936, signed by myself and E. J. Kreumpel and signatures thereon are the signatures of myself and E. J. Kreumpel."

Mr. Kreumpel being deceased at the time of the trial, the testimony of Mr. Gaughen was not subject to contradiction by the plaintiff.

In Holmes v. Connable, 111 Iowa 298, 82 N. W. 780, 781, the rule applicable under such circumstances is stated in the following language on page 301:

"The lips of the only two witnesses who could deny it [the contract] are forever closed. The only person who could controvert the admissions alleged to have been made is the dead man against whose estate this claim is produced. There is no defense that can be made, save as it may be found in the improbability of the stories of the plaintiff's witnesses, when tested by comparison with other evidence in the case, or the ordinary rules of human conduct under similar circumstances. * * * 'It is incumbent on the court to look upon such evidence with great jealousy, and to weigh it in the most scrupulous manner, to see what is the character and position of the witnesses gen-

erally, and whether they are corroborated to such an extent as to secure confidence that they are telling the truth.' ''

See First Trust JSL Bk. v. McNeff, 220 Iowa 1225, 264 N. W. 105; Young v. McClannahan, 187 Iowa 1184, 175 N. W. 26; McDonald v. Yellow Taxicab Company, 192 Iowa 1183, 184 N. W. 291.

Mr. Kreumpel was one of the substantial, influential and prosperous farmers of his community. He was president of the Security Savings Bank of Greeley from 1916 until it closed in 1930. He was not the managing officer of the bank and it is apparent he was made president because of his high standing in the community and not because of his banking experience. After the closing of the bank his reputation was such that the defendant bank did not hesitate to extend to him extensive credit. The only evidence in the record tending to prove that he was a dishonest man is found in the testimony of Gaughen. When Kreumpel sold the mortgaged livestock and had the check made payable to the mortgagee, defendant bank, there was manifestly no intention on his part to defraud the creditor, the sale being made in full recognition of the rights of the bank. When he delivered the check at the bank to Gaughen his indebtedness to the bank was past due. Though Kreumpel brought the check to the bank for the sole purpose of having it applied on his notes, Gaughen claims that when he told Kreumpel he was in need of some money for his personal use Kreumpel stated that it was all right with him to use this sum of $1,896.20 which was one third of his total indebtedness to the bank. It does not appear that either of them had other funds with which to pay the overdue notes.

We do not attempt to interpret the statement of the cashier of the defendant bank that ''if Mr. Kreumpel makes too much publicity about this, it would be too bad for him.'' The exhibits in the case are not certified to this court. With reference to the mutilated deposit slip, plaintiff's Exhibit 14, we quote from the decree:

''The plaintiff also proved that Kreumpel had in his pos-

session during his lifetime plaintiff's Exhibit 14. This exhibit is a duplicate deposit slip, made as a carbon copy, and from examination and comparison it conclusively appears to be a carbon copy of plaintiff's Exhibit 8 which is the deposit slip whereby Gaughen deposited the check for $1,896.20 to his own personal account on September 12th, 1935. It is to be noted that Exhibit 14 is mutilated by the top portion thereof being torn off so that the name of M. J. Gaughen as the depositor does not appear thereon. How such came to be is not shown, but on the whole record it is somewhat suggestive that Gaughen might have wished to avoid Kreumpel's knowing just what particular account he was crediting with the money.''

Gaughen delivered this slip of the defendant bank to Kreumpel showing the exact amount of the check and the exhibit may be construed as a receipt for the amount of money Kreumpel had delivered to the bank to apply on his indebtedness and tends to support plaintiff's contention that the delivery of the check was a bank transaction.

Gaughen testified that neither he nor Kreumpel told any officer of the defendant bank of any sales of partnership livestock mortgaged by defendant. The fact that the Community Savings Bank of Edgewood purchased from defendant the notes and chattel mortgages without discount suggests that there were not many sales made of mortgaged property.

Gaughen testified that on two occasions he personally made a deal with the Rath Packing Company for the sale of mortgaged partnership property and had the checks made payable to himself and deposited the proceeds in the partnership account. This witness does not testify to any transaction in which Kreumpel sold mortgaged property and had the checks made payable to himself. When Kreumpel sold the livestock to the Link Livestock Company he required the check to be made payable to the bank. Defendant's Exhibit 4, which Gaughen states is the last accounting between the partners, is not before us. There is no showing that this accounting included the check for $1,896.20. Gaughen claims he repaid $1,050, not to the

bank which was entitled to the money, but to the partnership account. It should be recalled that Gaughen used this account for his personal funds.

We are in entire agreement with the conclusion of the trial court that ''if there was no other evidence before the Court than as shown by the plaintiff in the making of his case on direct the Court might be entirely justified in finding that the check was in fact delivered to the bank and for the purpose claimed by the plaintiff that it be applied upon his notes,'' but we disagree with the court in its conclusion that the testimony of Gaughen, who was vitally interested in the question to be decided, balanced the scales in favor of the defendant bank.

In Scow v. Savings Bank, 136 Iowa 1, 6, 111 N. W. 32, 34, the opinion states:

''If a bank cashier or a bank president who is engaged in the active charge and control of the bank's business receives at his usual place of business the money or credits of a customer either as a time deposit or for credit on open account, the bank becomes at once chargeable therewith, and the fact that the officer puts it down in his own pocket or converts it to his own use is no defense to an action by the depositor, if no collusion in the wrong appears on the part of the latter.''

We have read the record in the light of the rule that:

'' 'It is incumbent on the court to look upon such evidence with great jealousy, and to weigh it in the most scrupulous manner, to see what is the character and position of the witnesses generally, and whether they are corroborated to such an extent as to secure confidence that they are telling the truth.' '' [111 Iowa, at page 301.]

In our judgment, plaintiff's theory of the transaction is the more probable and we are of the opinion that Kreumpel did not participate in the wrong perpetrated by Gaughen. There being no collusion between Kreumpel and Gaughen, the defendant must account to plaintiff for the misappropriation of the funds by its agent.

Appellant claims that M. J. Gaughen was an incompetent witness under section 11257, 1935 Code, known as the "dead man statute" and that the court erred in not sustaining his motion to suppress the deposition of the witness.

While Gaughen was interested in the question to be decided, which interest may be considered in passing on the weight and credibility to be given his testimony, he was not interested in a manner that would make him an incompetent witness under the above section. To render a witness incompetent, he must be interested in the sense "that he will either gain or lose by the direct legal operation and effect of the judgment, or [in the sense] that the record will be legal evidence for or against him, in some other action." Wormley v. Hamburg, 40 Iowa 22, 25. See Savings Bank v. Hanna, 124 Iowa 374, 100 N. W. 57; Reichart v. Downs, 226 Iowa 870, 285 N. W. 256.

Kreumpel, having delivered the check to Gaughen for the purpose of having it applied on his indebtedness, is entitled to an accounting though the indebtedness may have been a partnership indebtedness which is a question we do not determine. The trial court erred in finding that the delivery of the check was not a delivery to the defendant bank and in dismissing the petition.—Reversed and remanded.

HAMILTON, C. J., and MILLER, BLISS, and HALE, JJ., concur.

MITCHELL and OLIVER, JJ., dissent.