### SHAPIRO v. RUBENS et al.
### No. 9421.

Circuit Court of Appeals, Seventh Circuit.
Feb. 19, 1948.

Earl R. Cox, Thomas E. Garvin, Albert Ward, Palmer Ward, Scott Ging, and Gale Graber, all of Indianapolis, Ind., for appellant.

Hubert Hickam, Alan W. Boyd, Otto W. Buenting and Jerry P. Belknap, all of Indianapolis, Ind., for appellees.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

Plaintiff, a citizen of California, brought this action against defendants to be declared entitled as a distributee to one-half of the estate of Harry Rubens, deceased. The case was tried by the court without a jury. The evidence was presented by a stipulation as to certain facts and by oral testimony on behalf of the parties. The trial judge made special findings of fact favorable to defendants, upon which he rendered his conclusions of law, and entered a judgment for costs against the plaintiff. To reverse the judgment plaintiff appeals.

Plaintiff is a grand niece of Samuel Rubens, deceased. Her claim is based on the acts and conduct of Harry Rubens in his relationship with his father, Samuel Rubens, in that Harry had procured the legal title to all of the property and the estate of his father because of the confidential relationship existing between them and that because of the fraud practiced by Harry and the influence gained by him over his father, Harry Rubens was converted into

a trustee in favor of plaintiff for one-half of the estate of Samuel Rubens.

Samuel Rubens, at the time of his death, a prosperous, capable, and respectable citizen, was a resident of Indianapolis, Indiana. He left surviving him Harry Rubens, his son, in whom he had implicit trust and confidence. Hannah Schubach was his sister. This sister had a daughter, Flossie, who married Eli Goodman. June 28, 1918, plaintiff was born of that marriage. Shortly after her birth, Samuel Rubens took plaintiff into his home where she remained until his death. While he lived, he bestowed his affections upon her and provided for her by paying all of her living expenses, including the expense of her education, and gave her $10,000 worth of government bonds which were in his safety box at the time of his death.

There was evidence that soon after plaintiff's birth, Samuel said to plaintiff's father that he would give plaintiff an education and financial security, and that she and Harry would share alike in his estate; that in April, 1936, he said: "Harry, everything I got I am going to leave to you in trust, * * *. When I die I am leaving all of this to you, Harry, to take care of Frederica, as I have taken care of her. I want you to take care of her as a sister, and give her everything she is accustomed to, and when you die, Harry, I want you to promise me that you will give her one-half of your estate," and that Harry said: "I will promise you I will take care of her as a sister, and I will give her everything that you have given her, and when I pass away I will give her one-half of my entire estate."

Samuel Rubens died testate on June 26, 1937, leaving a will dated May 24, 1937. The contents and the circumstances under which it was executed will be presently related. Prior to the execution of his last will, and in 1924, within six years after plaintiff was taken to the home of Samuel, he executed a will by the terms of which $10,000 was bequeathed to each of his sisters and his brother, Moses; $5,000 each was bequeathed to five nephews and two nieces, one of whom was plaintiff's mother, and a trust of $5,000 was created for the benefit of plaintiff. All of the residue was left to Samuel's wife and to his son, Harry. The provisions for the plaintiff and the disposition of the residuary estate were included without change in later wills executed by Samuel Rubens in 1931, 1932 and 1933.

The record discloses that Samuel Rubens went to the Methodist Hospital on May 24, 1937 and there remained until his death; that just prior to the execution of his last will he had a conference with his attorneys at the hospital, in which he stated that his wife had died (she died May 18, 1937) and that he thought he should rewrite his will. He stated that he desired to omit the trust of $5,000 for plaintiff because he had accumulated $10,000 in government bonds for her which were in his vault. He also stated that he was not going to leave anything to his sisters or his brother except a legacy of $7,500 to one sister. He further stated that he had taken care of his family, his sisters, his brother, and other relatives for years, and would like for his son to do so, if able. His attorneys then advised him that, if he so desired, they could incorporate these matters in the will so that Harry would be obligated to take care of Samuel's relatives. He replied: "No, I don't want to do that at all. I am going to give everything to Harry. He can do whatever he pleases with it. It is his. I am not going to bind him and obligate him to do anything but I think he will do the same as I have been doing because he knows what I have been doing." His attorney then asked whether he would like to write a letter to his son to be read after his death, telling Harry what Samuel would like Harry to do, and he answered that he would.

The record also discloses that during this conference Samuel Rubens said nothing about ever having intended to make a will in favor of plaintiff, or ever having intended to give her one-half of his property, or having decided to make the particular will, because of any promises of Harry or about anything that Harry was to do with the property after his death, except that it was Harry's, and that he could do whatever he pleased with it.

Pursuant to Samuel Rubens' request the attorneys prepared a letter addressed to Harry to be delivered after Samuel's death. This letter [1] Samuel signed. It remained with the will in the safe of his attorneys until the decease of Samuel, when both documents were delivered to Harry. The will was duly probated in Marion County, Indiana. It made no mention of plaintiff. By the will Harry was named executor, and after the payment of certain specific bequests, it bequeathed and devised all the rest and residue of testator's estate to Harry Rubens, "to be his absolutely and forever." Harry Rubens, as executor, proceeded to settle the estate. His final account and report were approved, and on January 7, 1939 an order was entered closing the estate.

Harry Rubens died testate on July 27, 1945, and left surviving him Evelyn Rubens, his widow. His will was duly admitted to probate in the Probate Court of Marion County, Indiana. Defendants, Evelyn Rubens, Edgar Rogers and Indiana Trust Company, were named as executors.

By the will, the testator, after a number of minor bequests, devised and bequeathed the residue of his estate in trust with Indiana Trust Company, as trustee. Among the distributions to be made from the trust are: $1,000 per month for life to his widow; $200 per month for life to plaintiff to be increased to $400 per month at anytime she shall become a widow or not be living with a husband, and after the death of plaintiff, $400 per month to be paid to her children or their descendants so long as the trust continues. The trust terminates at the death of the widow, plaintiff, Hannah Schubach, Julia Shaneman, and the children of plaintiff living at the death of the testator, and the corpus then is to be paid to the plaintiff's children born after the death of the testator and the descendants of her deceased children whether born before or after his death.

The record further discloses that in October or November, 1945 after the death of Harry Rubens, plaintiff received a copy of his will, and that commencing with the month of August, 1945, she received month-

---

[1] "Indianapolis, Indiana,
May 24th, 1937.

Mr. Harry Rubens,
City.

Dear Son:

Today I executed my last will and testament in which you are designated as principal beneficiary and executor. This was done for the reason that I have the utmost confidence in you and in your ability to manage and transact business affairs and I feel confident that you will carry on after my death, in the way we have so often talked about.

You are aware of my desires, and, if conditions permit, carry out the following:

In regard to my sister Emma:

Pay her $50.00 per month so long as she lives, and also, during such time see that the taxes on her real estate, now owned by her, located in Indianapolis, are paid, and in the event the rental income to her from said property, during any month, while she is the owner thereof, falls below $75.00, make up the difference to her.

In regard to my sister Hannah:

Pay to, or expend for, her $125.00 per month so long as she lives, for her use in support of herself and her daughter, Flossie, and Flossie's children, Simon and Raymond.

Upon the death of Hannah, then pay to Flossie $65 per month so long as she lives; to Simon pay, or expend for his benefit, $25.00 per month, only so long as he is under twenty-one years of age, and to Raymond pay, or expend for his benefit, a like amount so long as he is under said age.

In regard to my brother, Moses:

Pay to, or expend for, him $35.00 per month, so long as he lives, and also, pay all necessary medical services rendered him, and for such medicines as he personally needs.

In regard to my sister Julia:

Pay to, or expend for, her $100.00 per month, so long as she lives.

In regard to Frederica:

Take good care of her always and see that she receives a good education. You know that I regard, as a sacred obligation, the proper care, maintenance and education of Frederica and it is my wish that such be continued at least to the same extent and in the same manner as I have provided for her during my lifetime.

I know that you will carry out my wishes to the best of your ability.

Your affectionate father,
/s/ Samuel Rubens."

ly checks for $200 each and that up to and including May, 1946 she cashed these checks, but that subsequent checks were retained by her uncashed; however, since the trial, all of the checks have been cashed and she has continued to accept and cash checks for the monthly payments up to December 5, 1947.

Before we discuss plaintiff's main contention we think it advisable to dispose of several incidental questions raised. Plaintiff says that the court erred in admitting in evidence the 1924 will and in permitting a witness to testify to the contents of the three subsequent wills of Samuel Rubens.

The argument is that the 1924 will was too remote in time; that it was not the will involved in this case; that no effort was made to produce the 1931, 1932 and 1933 wills or copies thereof; and that the testimony concerning these wills was hearsay.

■ In evaluating the argument that the 1924 will was too remote and that it was not the will involved in this case, we must consider the state of the case when the testimony of the witness was heard and the will was received in evidence. This we must have in mind in determining the competency of this evidence. Mutual Life Ins. Co. v. Hillmon, 145 U.S. 285, 294, 12 S.Ct. 909, 36 L.Ed. 706. In our case, plaintiff introduced evidence going back to the time she was taken into the Rubens home. In this state of the record, evidence tending to show the actual state of Samuel Rubens' mind at about that time was admissible. Mutual Life Ins. Co. v. Hillmon, supra, 145 U.S. at pages 295, 296, 12 S.Ct. at pages 912, 913, 36 L.Ed. 706. The 1924 will and the testimony of the witness concerning the contents of the subsequent wills, constituted circumstances which were proper to be considered in connection with the subsequent conduct and actions of Samuel Rubens. Henline v. Jacoby, 62 Ind. 298, 300. There was no error in admitting the will.

■ As to the argument that the testimony concerning the contents of the three subsequent wills was hearsay, it will be enough to say that the record discloses that no such objection was made before the trial court. Moreover, a proper foundation for the admissibility of the contents of the three subsequent wills was laid by the showing that Means, the witness testifying concerning the contents of the wills, had been the attorney for Samuel Rubens during his lifetime; that Means had prepared those wills and had searched his office and was unable to find the wills or copies thereof. This evidence was sufficient to justify secondary evidence. Cf. Meek v. Spencer, 8 Ind. 118; Newton v. Donnelly, 9 Ind.App. 359, 363, 36 N.E. 769.

■ Another point raised is that the court erred in ruling that plaintiff was incompetent to testify as to matters occurring during the lifetime of Harry Rubens. The argument is that there is no rule which disqualifies her as a witness in her own behalf in her own action to establish a trust in her favor against the estate of a deceased trustee.

But § 2-1715, Burns Ind.Stat.Ann.1946 provides that in suits in which an executor is a party, involving matters which occurred during the lifetime of a decedent, where a judgment may be rendered for or against the estate represented by such executor, any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against the estate, and § 2-1716 of the same statute provides that "In all suits by or against heirs or devisees, founded on a contract with, or demand against, the ancestor, to obtain title to or possession of property, real or personal, of, or in right of, such ancestor, or to affect the same in any manner, neither party to such suit shall be a competent witness as to any matter which occurred prior to the death of the ancestor."

We have not been cited any Indiana case, nor have we been able to find a case which squarely considers and decides the question, yet it has been held that in an action in which the plaintiff alleges that a person since deceased held certain property in trust, and seeks to enforce that trust, that such an action is an action based on a claim or demand within the meaning of that term as used in a statute making interested witnesses incompetent in a suit or a claim against an estate. Whitney v. Fox, 166

U.S. 637, 17 S.Ct. 713, 41 L.Ed. 1145. See also Jonas v. Hirshberg, 40 Ind.App. 88, 99, 79 N.E. 1058.

Be that as it may, upon the trial of the instant case, plaintiff did not claim, nor did she offer to testify to any conversation not already testified to by the other witnesses. In ruling upon the objection made to her testifying, the court said the question "calls for discretion of the court" and that "he [Harry Rubens] is not here to testify" and what he said has all been gone over by other witnesses, so that it would necessarily be nothing more than in support of the testimony of other witnesses. Under these circumstances we cannot say there was an abuse of discretion or that the judge erred in his ruling.

Plaintiff next makes the point that the findings of the court do not comply with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides that "In all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment * * *."

Plaintiff argues that there is no finding whether Harry Rubens did or did not perpetrate a fraud upon his father, and that the findings are not sufficient to apprise this court of the factual basis upon which the court rendered its judgment. With this contention we cannot agree.

To be sure, the primary and basic test as to the adequacy of findings is whether they are sufficiently comprehensive and pertinent to the issues in the case so as to provide a basis for purposes of decision. Schilling v. Schwitzer–Cummins Co., 142 F.2d 82. In our case the controlling issue was whether Samuel Rubens was induced by any promise of his son to make a will different from the one he would otherwise have made.

Essentially contained in all of the court's findings are these facts:

1. That Harry Rubens made no promise to his father, nor did he exert any influence over his father in the execution of his will.

2. That Harry Rubens was not present when Samual Rubens directed his attorneys to prepare his last will, and that Samuel Rubens was not induced to execute the will by any promise of his son, to devise and bequeath on his death one-half or any other portion of his property to plaintiff.

3. That Samuel Rubens' last will was executed freely and without any promise or influence of any kind on the part of Harry Rubens, and reflected the desires and wishes of Samuel Rubens, who clearly intended to devise and bequeath to his son his entire residuary estate free from any trust in favor of plaintiff and free from any restriction or limitation of any kind.

4. That no promise of any kind had been made by Harry Rubens with reference to any trust to be created by him in favor of plaintiff, and that in the creation of the trust by the last will of Harry Rubens of which plaintiff is a beneficiary Harry Rubens complied with the suggestion of his father that Harry Rubens should take good care of plaintiff always.

These findings appropriately and sufficiently determined the issues in the case. They are completely responsive to the issues and fairly present the ultimate facts; they advised this court of the facts upon which the court bottomed its decision and necessarily and irresistibly drew the conclusion that Harry Rubens had not perpetrated a fraud upon his father, and that Samuel Rubens had not been induced by any promise of his son to make a will different from the one he did make. Dubiske v. United States, 7 Cir., 98 F.2d 361; Schilling v. Schwitzer–Cummins Co., supra; and Gay Games, Inc., v. Smith, 7 Cir., 132 F.2d 930.

We now consider plaintiff's major contention that the facts found and the conclusions reached are not supported by the evidence.

The argument seems to be that because Samuel Rubens reposed and had implicit trust and confidence in his son, and that because there was testimony in plaintiff's behalf, that Samuel Rubens had intended to leave one-half of his estate to plaintiff and so informed his son, and that the son promised his father that if the father would

bequeath and devise all his property to him, he would see that plaintiff would share equally with Harry in Samuel Rubens' estate, a constructive trust had been established.

■■ The burden of proof to establish a constructive trust was upon plaintiff by such clear and convincing evidence as leaves the mind well satisfied that such a trust existed. The proof must be clear, convincing, and so strong as to lead to but one conclusion, or as was said in Edmundson v. Friedell, 199 Ind. 582, 591, 159 N.E. 428, 431: "To establish a constructive trust by parol, the evidence must be convincing, and to be convincing, it must be full and clear. It must be such as to be beyond the ordinary rules of preponderance of evidence." And as was said in the case of Russell v. Jones, 5 Cir., 135 F. 929, 942: " 'Claims of this nature against dead men's estates, resting entirely in parol, based largely upon loose declarations, * * * and when the lips of the party principally interested are closed in death, require the closest and most careful scrutiny to prevent injustice being done.' "

■ Equity has not set any bounds to the facts and circumstances out of which a fiduciary or confidential relationship may arise, and each case must stand or fall on its own facts. The relationship arises wherever the circumstances make it certain that confidence was reposed on the one side and accepted on the other. But where the relationship does not exist as a matter of law, the burden of proving facts from which it is claimed that such a relationship arises is upon the person seeking to establish the relationship.

■ There are certain legal and domestic relationships in respect to which the law raises a presumption of trust and confidence on the one side and a corresponding influence on the other. The relationship of parent and child belongs to this class. Where such a relationship exists and the one occupying the superior position deals with the other in such a way as to sustain an advantage, the law will presume that improper influence was exerted and that the transaction is fraudulent. This rule, however, is applied only as against the one who is assumed to be the dominant party in the relationship. In the relationship of parent and child the parent is assumed to be the dominant party and no presumption of fraud or influence arises on account of the mere existence of such relationship, and the party seeking to show that the child is the dominant party must establish that fact. It is not enough to prove, without more, that Samuel Rubens reposed and had implicit trust and confidence in his son. The fact that Harry was his son and that he had confidence in and trusted him, is not to be construed that a fiduciary or confidential relationship existed between them so as to cast the burden of proof upon defendants. Westphal v. Heckman, 185 Ind. 88, 113 N.E. 299.

■ With these principles in mind, we have examined the record so as to ascertain whether the evidence was sufficient to sustain the findings of the court, but we will not disturb the findings unless they cannot be sustained upon any rational view of all the evidence including all reasonable inferences of which the testimony is susceptible that is to say, we are authorized to reverse the judgment only if in our view the findings of fact were clearly erroneous, or the law was incorrectly applied. Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A. following section 723c.

■ It is true that defendants produced no witnesses who were able to deny the conversations testified to by plaintiff's witnesses. But their credibility was not necessarily established by mere positiveness. Freeseman v. Henrichs, 233 Iowa 27, 6 N. W.2d 138, 142. Their testimony was of such a nature that it could not be contradicted by direct evidence since the lips of the two witnesses (Samuel and Harry Rubens) who could deny the conversations were forever closed. The mere fact that the testimony of those witnesses was not directly contradicted did not require the trial judge to accept such testimony. He was privileged, nay, it was his duty to consider the probability or improbability of the testimony of the witnesses, when tested by comparison with other evidence in the case, Peterson v. Citizens State Bank, 228 Iowa 219, 290 N.W. 546, 548, especially if such testimony was inconsistent with oth-

er matters which the court found to be established by the evidence.

In the instant case there is no claim or evidence that the wills executed by Samuel Rubens prior to his last will were induced by an oral promise of Harry Rubens, and there can be no question that Harry Rubens was not present when Samuel Rubens directed his attorneys to prepare his last will.

Plaintiff based her claim upon a conversation said to have occurred in 1918 when she was about three months old and Harry Rubens was twenty-two years of age, when it could reasonably have been expected that he might have children of his own. The other conversations, it was claimed, occurred in 1936, but the record does not disclose any evidence or reason to prevent Samuel Rubens, a respectable business man and in possession of his faculties, from including in the 1924, 1931, 1932 and 1933 wills a trust for plaintiff to any extent, if that had in fact been his intention, or if he had in fact made any such promise as is contended for by plaintiff.

In this connection it is significant indeed, and important too, that in the conference just prior to the execution of his last will, Samuel Rubens stated that he desired to omit the trust of $5000 for plaintiff because he had accumulated $10,000 in bonds for her which were in his vault, and while in the letter of May 24, Samuel Rubens expressed a wish that his son take good care of plaintiff and that she be taken care of "at least to the same extent and in the same manner as I have provided for her during my lifetime," he did not say or even intimate that she should receive one-half of his estate or that his son leave any part of his estate to plaintiff. It would have been easy for Samuel Rubens in his last will to have created such a trust for plaintiff or to indicate in the letter that his son create such a trust. But he did neither.

■ In the state of this record, the court was bound to consider all of the circumstances appearing in evidence and make such findings as were warranted by all the evidence. In this connection it is well to remember that it is presumed that all persons act honestly, that fraud is never presumed, especially where the parties whose conduct is being considered are dead, and that where fraud is charged, it must be established by the party who relies upon it to sustain his cause of action. 31 C.J.S., Evidence, § 126.

■ In Indiana, as before noted, the burden of proof to establish a constructive trust is upon a plaintiff, and it is the province of the trial judge to draw the proper inferences from the facts proved and thus to find the ultimate or inferential facts. The failure to find the ultimate fact is deemed a finding against the party having the burden of proof, Westphal v. Heckman, supra, and on appeal, all facts not embraced in the special findings will be regarded as not proved by the party having the burden of the issue. The failure to find a fact essential to a recovery is equivalent to a finding against the party having the burden of proving the same. State, ex rel. Siebrase v. Meiser, 201 Ind. 337, 341, 168 N.E. 185.

■ We conclude that on the record before us the evidence fails to disclose the existence of a confidential relationship, in fact, between Samuel Rubens and Harry Rubens, or that Harry Rubens wrongfully induced his father to devise and bequeath to him the residue of his estate, and that the findings and the conclusions reached by the trial judge were justified by the evidence.

Since we have concluded that the judgment of the District Court should be affirmed, we need not consider whether defendants' contention that plaintiff, by cashing the monthly checks for $200 each, has elected to accept the provision made for her in Harry Rubens' will, and hence is estopped to maintain the claim asserted in this case.

Affirmed.