SWANSON, Special Administratrix, Appellant, vs. MARYLAND CASUALTY COMPANY and others, Respondents.

*March 2—April 6, 1954.*

· For the appellant there were briefs by *Genrich & Terwilliger,* attorneys, and *Emil A. Wakeen, Walter H. Piehler,* and *Neil M. Conway* of counsel, all of Wausau, and oral argument by *Herbert Terwilliger.*

For the respondents Maryland Casualty Company and Dewey Bayer there was a brief by *Smith, Okoneski, Puchner & Tinkham* of Wausau, and oral argument by *Charles F. Smith.*

For the respondents Farmers Mutual Automobile Insurance Company and Leon Emerson there was a brief by *Krueger & Fulmer* of Wausau, and oral argument by *William F. Krueger.*

GEHL, J. The testimony which we have recited represents the version of defendants and is in many respects contradicted.¹ The rule requires, however, that we consider the evidence most favorably to defendants and to the jury's findings. *Koniecko v. Huffman* (1953), 265 Wis. 79, 60 N. W. (2d) 729, 61 N. W. (2d) 880. For that reason we do not consider it necessary to recite the testimony which supports the claim of plaintiff, particularly since there is nothing in the record to indicate that the story as it was told by the defendants and their witnesses is incredible.

The trial court, instead of directing his specific instructions to the various questions of negligence, opened his charge with the statement:

"I can now instruct you on the first, third, and fifth questions together."

The first, third, and fifth questions of the verdict inquire as to the alleged negligence of the respective parties.

Secs. 85.40 (2) (a) and (b), Stats., each of which limits the rate of speed at which an automobile may be driven, were then read by the court to the jury. The further instruction was given immediately following:

"This section of the statutes,—that is, 85.40 (2) (b), requires every vehicle to be operated at an appropriate reduced speed when approaching and going around a curve, when approaching a hill crest, *and generally to be controlled in such a manner as to avoid collision.*"

Plaintiff contends that the portion of the charge which we have italicized was erroneous and prejudicial. The instruction is erroneous. It is not the duty of a driver to have his car under such control and to drive it at such rate of speed as to avoid accident, but to use ordinary care to that end. *Quinn v. Hartmann* (1933), 210 Wis. 551, 246 N. W. 587; *Schulz v. General Casualty Co.* (1939), 233 Wis. 118, 288

N. W. 803; *Lembke v. Farmers Mut. Automobile Ins. Co.* (1943), 243 Wis. 531, 11 N. W. (2d) 169, 12 N. W. (2d) 68. Although erroneous, the instruction is not prejudicial to plaintiff. He was found by the jury not to have been negligent with respect to speed.

Plaintiff's contention that the following instruction, which also deals with the question of speed, is erroneous, must be rejected:

"Independent of statute, when the view of the driver is [sic] an automobile is obstructed, whether by reason of a grade or otherwise, the speed of the car should be so reduced that the car can be stopped within the distance the driver can see ahead."

Plaintiff attacks this portion of the charge upon the ground that the trial court should have added thereto some reference to the duty of a driver when he approaches an object rendered obscure by reason of atmospheric and other conditions; he contends that some reference should have been contained therein to the existence of "the phenomenon of camouflage." He may not complain of that for the reason that he asked for no instruction with respect thereto.

The court, after instructing the jury that the statute provides that under certain circumstances one should not stop, park, or leave standing any vehicle upon a highway, read sec. 85.19 (8), Stats., which provides as follows:

*"Disabled vehicles upon highway.* The provisions of this section shall not apply to the operator of any vehicle which is disabled while on the highway in such a manner or to such extent that it is impossible to avoid stopping or temporarily leaving such vehicle in such position."

Plaintiff contends that sec. 85.19 (8), Stats., is not applicable, that the evidence shows conclusively that it was not impossible for Bayer to avoid temporarily leaving his

car in the position in which he left it before the accident. Bayer was found negligent in respect to parking. If the instruction was erroneous plaintiff was not prejudiced thereby.

Plaintiff contends also that the instructions referred to and others "indicated to the jury the position of the court relative to the respective negligence of the parties." The weakness of plaintiff's contention is demonstrated by his reference to the fact that the court instructed the jury on question 5 which inquires as to his conduct before instructing with respect to questions 1 and 3 which inquire as to the conduct of Bayer and Emerson, respectively. We know of no rule which requires that the various portions of a charge be given in any prescribed order. We have examined the entire charge and find nothing in it which suggests that it might have influenced the jury toward a finding or findings for or against either of the parties.

It is contended that the findings of negligence on the part of plaintiff as to lookout, control, and operation of his truck on the left side of the road are a duplication rendering the comparison of negligence inaccurate. No objection was made by plaintiff to the inclusion in the verdict of the questions which inquire as to his conduct. If the verdict and the findings are open to the objection which plaintiff now urges, it was waived by his failure to interpose it before the issues were submitted to the jury. *Hilker v. Western Automobile Ins. Co.* (1931), 204 Wis. 1, 231 N. W. 257, 235 N. W. 413; see also *Nimits v. Motor Transport Co.* (1948), 253 Wis. 362, 34 N. W. (2d) 116, where the court said (p. 364):

"Counsel for the parties have a distinct obligation to aid in the preparation of special verdicts and to voice objection to the form of questions, if such questions are objectionable, when it will afford an opportunity to the trial court to correct them. Counsel may not accept the language of the trial court as used in the special verdict without objection, wait and see whether the answers of the jury are satisfactory and,

if not, then for the first time complain about the phraseology upon appeal."

Error is assigned upon the ground that the court refused to submit a question as to Bayer's failure to warn approaching traffic of the position of his car upon the highway. The court instructed the jury as to the statutory duty of an operator with respect to taillights. The jury found that Bayer had complied. It is urged that Bayer "could have sent his wife north to flag down traffic." (It may not be entirely inappropriate to call attention to the fact that it does not appear that he had such control over her that she would have complied had he directed her to.)

Obviously the legislature had but one purpose in mind in enacting the statute, sec. 85.06 (5), which requires a light upon the rear of an automobile—to apprise travelers approaching from the rear of the presence of the preceding car. It would seem that if that body had considered that more adequate warning should be given it would have required it. Where it did consider that warning more adequate than that provided by lights upon a motor vehicle should be given it provided so expressly by enactment of sec. 85.06 (18), which requires that heavy vehicles such as trucks, buses, etc., be equipped with fusees, flares, or other similar instrumentalities and that they be placed upon the highway when the vehicle is stopped thereon regardless of whether or not the lighting equipment upon the vehicle is functioning.

A somewhat similar contention has been made in cases involving statutes requiring that fusees or flares be placed upon the highway when a vehicle is stopped or parked thereon only when the lighting equipment upon the vehicle is disabled. It was contended in those cases that the flares or fusees should have been placed although the lighting equipment upon the vehicle was in operation as required by statute. The claim was rejected upon the ground that compliance with

the statute is all that is required. *Ellenberger v. Fremont Land Co.* (1940), 165 Or. 375, 107 Pac. (2d) 837; *Brittain v. Wichita Forwarding Co.* (1949), 168 Kan. 145, 211 Pac. (2d) 77; *Rasing v. Healzer* (1943), 157 Kan. 516, 142 Pac. (2d) 832.

The question whether more warning should be given by the operator of an automobile parked upon a highway than the display of an adequate taillight has been considered by the courts of other jurisdictions. Those courts have held that no more is required, *Farrar v. Farrar* (1930), 41 Ga. App. 120, 152 S. E. 278; *Chapin v. Stickel* (1933), 173 Wash. 174, 22 Pac. (2d) 290; *Martin v. Smith* (1951), 103 Cal. App. (2d) 894, 230 Pac. (2d) 679; *James v. White Truck & Transfer Co.* (1934), 1 Cal. App. (2d) 37, 36 Pac. (2d) 401.

We adopt as stating our view what was said by the court in *James v. White Truck & Transfer Co., supra* (p. 42) :

"A red light is universally recognized in the statutes and by common usage as the most effective method of giving warning of danger during the hours of darkness. It is indeed the only method in common use to give warning at night of excavations in the roadway, of piles of dirt, building materials, road machinery, road barricades, and other objects or conditions on the highway that constitute a menace to travelers. There was no fog at the time and place of the collision, nor does the record disclose any other condition or circumstance existing just prior to the collision, that would characterize the situation as differing in any way from the usual situation of a stalled vehicle, or any other large obstruction on the highway. Unless there exists some particular condition or circumstance that would suggest to an ordinarily prudent person that the red-light warning specified by law and universally regarded as entirely adequate to advise those prudently using the highway that danger lurks ahead, was or would be ineffective, it would seem to do violence to reason to say that a prudent man would not feel that he had fully performed the duty he owes to the traveling public when

he leaves his disabled vehicles on the highway, lighted as the undisputed evidence shows the truck and trailer were."

Counsel call attention to but one case, the opinion in which they contend suggests that additional warning should be given, *Kastler v. Tures* (1926), 191 Wis. 120, 210 N. W. 415, where the court said (p. 124) :

"The plaintiff was bound to use ordinary care by the means of lights and otherwise to prevent a collision between his service car and cars operating on the highway."

The court was not called upon to consider the question whether additional warning should be given. In that case additional warning was given by a man with a flashlight. The expression is dictum, made without occasion to consider the question which counsel raise in the instant case.

It is contended that a new trial should be granted because of the disparity in the jury's evaluation of negligence. Plaintiff maintains that a finding that Bayer who parked his black car from five to ten minutes during the nighttime on the highway and thus set up the entire result is guilty of only 15 per cent of the negligence is shocking; that plaintiff's negligence was but momentary inadvertence while Bayer's was deliberate and long-lasting. If we were required to concede that the latter statement is a complete and adequate description of plaintiff's conduct and ignore the testimony of Bayer and his wife we might have to agree. That is not the case, however. In making its comparison the jury had the right to consider that Bayer's car was in plain sight with its front and rear lights burning; that plaintiff's wife saw it quite some distance before her husband's car reached the vicinity of the Bayer car; that plaintiff should have seen it at least as soon as his wife did; that because of his failure to have seen the car earlier he was required to apply his brakes with force and cause his truck to skid onto the wrong side of the road

and into the Emerson car; that because of his prior failures he lost control of his car or turned it deliberately and rather sharply to his right into a ditch, up a 10-foot embankment, along the top of the embankment a distance of 25 to 30 feet, and then it rolled down into the highway.

We are unable to say that the jury was not warranted in attributing causal negligence as it did.

Finally, plaintiff urges that a new trial should be granted in the interests of justice. He contends that the court should not have given the case to the jury at 5:10 o'clock on a Saturday afternoon when after five days of trial the jury was visibly exhausted and at least one of its members suffering from a severe cold. He complains principally of one of the reasons given by the court for its refusal to suspend the trial until the following Monday—that such action would result in additional expense to the county. If that had been the court's only reason for denying the request made by Bayer's, not plaintiff's, counsel, we should be required to attribute some merit to the contention. There were other reasons given, however, as appears from the judge's statements made at the close of the testimony and on motions after verdict.

At the close of the testimony and in response to the request of Bayer's attorney that the trial be suspended, the judge, after referring to the statement of Bayer's attorney that one of the jurymen was ill, said:

"I am glad that counsel makes that statement, because I am fearful that you [Mr. Smith] will not get back here next Monday. I hope he [the juryman] is able to get back. I have myself also contracted a slight cold. I hope I will be able to be up and around next Monday. We have worked on this case for five days. To take any chance now of having a mistrial because of the absence of even one juror next Monday, it seems to me, would be taking an undue chance."

He then referred to the expense which would result if the matter were delayed. He continued:

"Because of the importance of the case, the court feels it would be improper to have this matter postponed over the week end. . . . I might state further, that there was a disposition on the part of counsel, when one of the jurors was not present here the other morning, to refuse to continue with 11 jurors, and we had to wait a couple of hours. That was perfectly within counsel's rights. But nevertheless, if we should find that a juror was sick next Monday, I am confident that counsel probably would not agree to continue with 11, and would ask for a mistrial at that time."

On motions after verdict and in response to plaintiff's motions for a new trial upon the same ground the trial judge stated again that he was fearful that illness in one or more members of the jury might have resulted in a mistrial; that he had taken into consideration the fact that there was an epidemic of "flu" in Eagle River at that time and that it was his recollection that the schools in Eagle River were closed at that time because of the epidemic. He again referred to the fact that a suspension of the trial would have resulted in additional expense to the county.

We do not consider that the fact that the jury was held for deliberation on Saturday night of itself shows a lack of proper deliberation on its part. There is no evidence in the record which would indicate that the answers to the questions of the verdict were made as they were because of the fact that the trial was not suspended until the following week.

*By the Court.*—Judgment affirmed.