CALLAN (Robert), Respondent, vs. WICK and others, Appellants.

*January 13—February 11, 1955.*

For the appellants Joseph R. Wick and the Farmers Mutual Automobile Insurance Company there was a brief by *Hannan, Johnson & Goldschmidt,* attorneys, and *Herbert L. Wible* of counsel, all of Milwaukee, and oral argument by *Mr. Wible.*

For the appellant Great American Indemnity Company there were briefs by *Kivett & Kasdorf,* attorneys, and *Clifford C. Kasdorf* and *Nonald J. Lewis* of counsel, all of Milwaukee, and oral argument by *Clifford C. Kasdorf.*

For the respondent there was a brief by *Lowry & Hunter* of Waukesha, and oral argument by *Richard N. Hunter.*

FAIRCHILD, C. J. In the matter of the appeal of Joseph R. Wick and the Farmers Mutual Automobile Insurance Company, it must be held that the evidence does not sustain the findings of the jury as they affect those appellants.

Robert Callan, riding in the car driven by his wife, Shirley Callan, was injured when their car collided with a truck driven or in charge of appellant Wick. Wick had been called

to tow an automobile of Reuben Held, which had stalled at a driveway near the scene of the collision. Wick's truck was driven up ahead of the Held car and backed up to it. A chain had been hooked to a front spring, and Wick, starting to pull, had moved only a few feet ahead when he noticed the Callan car coming in his lane of travel. He was on his side of the 18-foot highway. Wick stopped his truck, flashed his headlights from low to high beam as a signal to the oncoming car, but almost immediately the collision occurred. This testimony is not denied by respondent Callan or Mrs. Callan except as they say they did not see the Wick truck. Officer Frank Bellin, who arrived at the scene of the accident a very short time after the collision, testified that upon his arrival the Callan car was way over on the left-hand side of the road when it should have been on the right. "We made measurements which showed the car was over the center line, and completely on the wrong side of the road. I talked with Mrs. Callan about the accident and she told me that she had been driving, that she didn't see anything on the road ahead and the children in the back seat were making noise and she tried to quiet them by turning around and then she struck the wrecker." He further testified that "No part of the wrecker, even after the accident, was beyond the center line of the highway."

The Callan car had been moving south when, according to one story, Shirley Callan turned suddenly out of her lane of travel over and into the east (Wick's) lane. The reason advanced on the trial differs decidedly from statements made at the time of the collision to Officer Bellin. It is of such an uncertain and negative character, so lacking in foundation and merit as to be incapable of furnishing any excuse for visiting any of the burden of any liability for the resulting damage upon the defendant Wick. The excuse then offered by Mrs. Callan is that she saw a dark object directly in front of her which looked to her like a large truck parked on the

road, and that it was directly in front of her, causing her to swerve to avoid whatever this was and then, according to her testimony, she "was right on top of the truck." At that moment she exclaimed, "We are going to hit it." She also testified: "When I first saw this truck, I mean the black object that I mentioned first, I had just picked it up in the headlights, and it was quite a distance away and I would say about 70 feet. . . ." And she further testified: "As I pulled out I did not see anything on the left side of the road until I was right on top of it."

In addition, there is testimony by the respondent, Robert Callan, with reference to the reason Mrs. Callan left her lane of travel and "swerved" over to Wick's lane, to which we must refer. He testified: "It was a split fraction of a second between the time my wife exclaimed and the accident, and I don't know where my car was on the highway at that time. The dark object on the road ahead looked like a dark cloud or something and I don't recall whether it was a cloud or a big box in the road or a barn or anything else."

Mrs. Callan testified, among other things: "When I first saw this big black object I had picked it up in the headlights, . . . At that time I was driving about 30 to 35 miles an hour. I reduced my speed but not too great to about 25 or something like that because I was intending to go around it. I didn't see anything coming toward me; I made no attempt to stop. This object looked like it was standing still, and I pulled out to pass it, and that is when I hit the truck. . . . I was about 40 feet to 50 feet or something like that behind this object when I attempted or started to get in the opposite lane to pass it. When I got alongside of where this big object was the truck loomed up. . . . I can't imagine what became of the dark object. I don't know if it was a truck, house, or barn." She made no effort to comply with the rules of the road. Sec. 85.15 (2), Stats.

The jury's answer to the question submitted as to lights on the truck, in effect, is that the lights were not adequate to warn Shirley Callan of its position on the highway. It is considered that that finding is of no consequence here and can have no determining force in the decision on this appeal. The lights of the truck were lighted and were in full compliance with the statutes. They constituted adequate warning lights to other users of the highway, regardless of whether they were capable of enabling Mrs. Callan to tell whether there was a barn, a cloud, or some other imaginary object ahead of her on her side of the road. *Swanson v. Maryland Casualty Co.* 266 Wis. 357, 63 N. W. (2d) 743. The judgment against Joseph R. Wick and his insurer must therefore be reversed and the complaint dismissed as to them.

The questions as answered by the jury did not help the trial judge in deciding upon the judgment to be entered.

As to the claim of Robert Callan against the insurer of his car, in which he must be regarded as riding as a guest, the findings of the jury are confused, if not inconsistent, with respect to his contributory negligence. It becomes unnecessary to determine whether such inconsistency under the rule announced in *Statz v. Pohl,* 266 Wis. 23, 62 N. W. (2d) 556, 63 N. W. (2d) 711, requires a new trial because of our holding that a new trial is necessary for other reasons.

The jury found that Mrs. Callan failed to exercise ordinary care not to increase the danger assumed by respondent when he entered the automobile as to lookout, control, and position on the highway, and that her failure was causal. They also found that the carelessness of Shirley Callan did not persist long enough to give respondent opportunity effectively "to protest." At the same time they found that plaintiff Robert Callan was negligent as to lookout, and that lookout was causal. No question as to whether Robert Callan had assumed the risk was requested to be included in the verdict.

Wick testified that when he first saw the Callan car approaching it was from 400 to 500 feet away and already on the wrong side of the highway. It cannot be held as a matter of law that Robert Callan's contributory negligence as to lookout was not causal, because on the basis of Wick's testimony Callan had sufficient length of time to see the Wick truck and to warn his wife of its existence. Therefore, it was error for the trial court to change the answer as to the causation question relating to Callan's negligence as to lookout.

Under sec. 331.045, Stats., when a comparison of negligence is made and the same is expressed in percentages, the total aggregate negligence must always equal 100 per cent. Because the jury attributed 10 per cent of the causal negligence to Wick and we have held that the evidence does not sustain any finding of causal negligence against him, a new comparison must be had between the plaintiff Robert Callan and the defendant insurer. Such comparison lies within the province of the jury and necessitates a new trial on the negligence issues existing between those two parties. We perceive no reason why the issue of damages should again be litigated; so the new trial will be restricted to the issues of negligence only.

We have reviewed other questions raised by appellants but find no prejudicial error. We do not, under the circumstances, feel called upon to pass upon the propriety of the admission in evidence as exhibits of certain photographs.

*By the Court.*—Judgment reversed as to Wick and his insurer, and cause remanded with directions to dismiss the complaint as against Wick and to grant a new trial between the plaintiff and the defendant, the Great American Indemnity Company, insurer of Shirley Callan, in conformity with this opinion.