Shirley J. JENSEN and Paul B. Jensen, Plaintiffs and Appellants,

v.

INTERMOUNTAIN HEALTH CARE, INC., Defendant and Respondent.

No. 17980.

Supreme Court of Utah.

Feb. 15, 1984.

James R. Hasenyager, Ogden, for plaintiffs and appellants.

Allen M. Swan, Salt Lake City, for defendant and respondent.

STEWART, Justice.

This is an appeal from the dismissal of a medical malpractice action in which the plaintiffs' decedent Dale Jensen died as a result of negligence on the part of an emergency room physician and the hospital. The plaintiffs settled with the defendant doctor and went to trial against the hospital. The jury returned a special verdict, finding plaintiffs' decedent 46 percent negligent in causing his own death; Intermountain Health Care, Inc., 36 percent neg-

ligent; and the doctor, 18 percent negligent. Judgment was entered in favor of plaintiff Shirley J. Jensen and against the defendant hospital. The trial court then set aside the original award and entered a judgment of no cause of action. We reverse.

The issue in this case is one of first impression. It is whether the Utah Comparative Negligence Act requires the negligence of each defendant in a multi-defendant case to be compared individually against the negligence of the plaintiff or whether the total negligence of all the defendants should be compared to that of the plaintiff to determine whether a particular defendant is liable. Under the latter approach, or the "unit" rule, the negligence of all defendants is taken together in making the comparison; under the "Wisconsin" rule, the negligence of each defendant is compared against the plaintiff's negligence to determine whether a particular defendant is liable.

Thus, under the "unit" rule, the plaintiffs' decedent's 46 percent negligence in this case is compared with the combined 54 percent negligence of the defendants, and the plaintiffs would therefore be entitled to recover against the defendant. Under the "Wisconsin" rule, which was applied by the trial court, the negligence attributed to plaintiffs is greater than that of Intermountain's negligence by itself, and plaintiffs would not recover.

Intermountain Health Care argues that the trial court's ruling is correct on the ground that Utah intended to adopt the "Wisconsin" rule. The first section of the Utah Comparative Negligence Act, U.C.A., 1953, § 78–27–37 constitutes the whole of the one-section Wisconsin Act. Contrary to the Wisconsin statutory scheme, the Utah Act is a comprehensive, seven-section statutory scheme that deals with joint and several liability of multiple tortfeasors and the use of special verdicts for determining relative degrees of fault. The Utah Act must therefore be construed in light of, and to harmonize with, those additional sections.

## I.

When construed as a whole, the Utah Comparative Negligence Act indicates that the legislative intent was not to adopt the Wisconsin rule of comparative liability. Unless the whole Utah Act is considered together, the result would be to misconstrue not only Section 1, but also other sections of the Act. Thus, adoption of the Wisconsin rule would nullify in part critical parts of the Utah Act and would produce results unfair to *both* plaintiffs and defendants.

Even the Wisconsin Supreme Court has become disenchanted with the fairness of its own rule. It has stated: "The majority of the court has become convinced that comparing the negligence of the individual plaintiff to that of the individual tortfeasor—rather than comparing the negligence of the individual plaintiff to that of the combined negligence of the several tortfeasors who have collectively contributed to plaintiff's injuries—leads to harsh and unfair results...." *May v. Skelley Oil Co.*, 83 Wis.2d 30, 264 N.W.2d 574, 578 (1978). And the Arkansas Supreme Court, in rejecting the Wisconsin rule, has characterized that rule as being "demonstrably unjust." *Walton v. Tull*, 234 Ark. 882, 892–93, 356 S.W.2d 20, 26 (1962).

We recognize that when the Legislature adopts a statute from another state, the presumption is that the Legislature is familiar with that state's judicial interpretations of that statute and intends to adopt them also. 73 Am.Jur.2d *Statutes* § 333 at 46 (1974). However, that canon of statutory construction is not a hard and fast principle; it is subject to a number of exceptions, several of which are directly applicable in the instant case. In the first place, it is not applicable where there have been material changes made in the second statute. *Copper Queen Consolidated Mining Co. v. Territorial Board of Equalization*, 206 U.S. 474, 27 S.Ct. 695, 51 L.Ed. 1143 (1907); *Stutsman County v. Wallace*, 142 U.S. 293, 12 S.Ct. 227, 35 L.Ed. 1018 (1892); *White v. White*, 196 Ark. 29, 116 S.W.2d 616 (1938); *McNary v. State*, 128

Ohio St. 497, 191 N.E. 733 (1934). *See also* 73 Am.Jur.2d *Statutes* § 334 at 477 (1974). Secondly, the above-stated rule of statutory construction is subject to the exception that if the borrowed statute is "given a different setting in the adopting state" the construction placed upon the statute in the originating state need not be followed. *Id.* at 478; *State v. Reed,* 39 N.M. 44, 39 P.2d 1005 (1934); 102 A.L.R. 995 (1936).

 Furthermore, the canon of construction referred to is not applicable where the courts of the adopting state are clearly of the opinion that the foreign construction is erroneous. *Whitney v. Fox,* 166 U.S. 637, 17 S.Ct. 713, 41 L.Ed. 1145 (1897); 73 Am.Jur.2d, *supra,* at 478. In addition, "the interpretation of an adopted statute by decisions of dates subsequent to that of the adoption cannot have been adopted by the statute. The adoption is accordingly not presumed to carry such construction, which is not binding upon the courts of the adopting state." 73 Am. Jur.2d *Statutes* § 335 at 478 (1974), and cases cited.[1]

In any event, this Court has indicated a healthy and deserved skepticism about giving too much credence to the various canons of statutory construction. In *Salt Lake City v. Salt Lake County,* Utah, 568 P.2d 738 (1977), the Court stated that rules of construction may be useful when applied in appropriate instances, "[b]ut helpful as rules of construction often are, they are useful guides but poor masters; and they should not be regarded as having any such rigidity as to have the force of law, or distort an otherwise natural meaning or intent. Their only legitimate function is to assist in ascertaining the true intent and purpose of the statute." *Id.* at 741.

## II.

The Utah Comparative Negligence Act, U.C.A., 1953, § 78–27–37, *et seq.,* was passed in 1973. 1973 Utah Laws, ch. 209. Chapter 209 adds six additional sections to

the Wisconsin provision. The Utah Act provides in full text:

## UTAH COMPARATIVE NEGLIGENCE ACT

Section 1. Actions based on negligence or gross negligence—Contributory negligence.

Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence or gross negligence resulting in death or in injury to person or property if such negligence was not as great as the negligence or gross negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering. As used in this act, "contributory negligence" includes "assumption of the risk."

Section 2. Powers of the court.

The court may, and when requested by any party shall, direct the jury to find separate special verdicts determining (1) the total amount of damages suffered and (2) the percentage of negligence attributable to each party; and the court shall then reduce the amount of the damages in proportion to the amount of negligence attributable to the person seeking recovery.

Section 3. Right of contribution among joint tortfeasors.

(1) The right of contribution shall exist among joint tortfeasors, but a joint tortfeasor shall not be entitled to a money judgment for contribution until he has, by payment, discharged the common liability or more than his pro rata share thereof.

Section 4. Contribution among joint tortfeasors.

(1) A joint tortfeasor who enters into a settlement with the injured person shall not be entitled to recover contribution from another joint tortfeasor whose lia-

---

**1.** Such would be the case if the Utah Act were borrowed from Idaho, as is possible.

bility to the injured person is not extinguished by that settlement.

(2) When there is a disproportion of fault among joint tortfeasors to an extent that it would render inequitable an equal distribution by contribution among them of their common liability, the relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares, *solely for the purpose of determining their rights of contribution among themselves*, each remaining severally liable to the injured person for the whole injury as at common law.

(3) As used in this section, "joint tortfeasor" means one of two or more persons, jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

Section 5. Exemptions.

Nothing in this act shall affect:

(1) The common law liability of the several joint tortfeasors to have judgment recovered, and payment made, from them individually by the injured person for the whole injury. However, the recovery of a judgment by the injured person against one joint tortfeasor does not discharge the other joint tortfeasors.

(2) Any right of indemnity which may exist under present law.

(3) Any right to contribution or indemnity arising from contract or agreement.

Section 6. Release of one or more joint tortfeasors.

A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors, unless the release so provides, but reduces the claim against the other tortfeasors by the greater of: (1) The amount of the consideration paid for that release; or (2) the amount or proportion by which the release provides that the total claim shall be reduced.

Section 7. Effect of releases on other joint tortfeasors.

(1) A release by the injured person of one joint tortfeasor does not relieve him from liability to make contribution to another joint tortfeasor unless that release:

(a) Is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued; and

(b) Provides for a reduction, to the extent of the pro rata share of the released tortfeasor, of the injured person's damages recoverable against all the other tortfeasors.

(2) This section shall apply only if the issue of proportionate fault is litigated between joint tortfeasors in the same action.

(Emphasis added.)

Section 1 of the Utah Act is comparable to and comprises the whole of the Wisconsin Comparative Negligence Act. At the time of the adoption of the Utah Act, the Wisconsin comparative negligence provision contained no other provisions, let alone provisions comparable to Sections 2 through 7 of the Utah Act.[2]

▉ The best evidence of the true intent and purpose of the Legislature in enacting the Act is the plain language of the Act. The meaning of a part of an act should harmonize with the purpose of the whole act. Separate parts of an act should not be construed in isolation from the rest of the act. *Osuala v. Aetna Life & Casualty Co.*, Utah, 608 P.2d 242 (1980); *Monson v. Hall*, Utah, 584 P.2d 833 (1978). Thus, the meaning of the Comparative Negligence Act cannot properly be determined without taking into account Sections

**2.** The entire text of the Wisconsin Comparative Negligence Statute enacted in 1971 provides as follows:

Contributory negligence shall not bar in an action by any person or his legal representative to recover damages for negligence resulting in death or an injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering.

Wis.Stat. § 895.045 (1975).

1 through 7 of the Act and the purposes they were designed to effectuate. Indeed, as appears below, Sections 2, 3, 4, and 5 are particularly relevant and require harmonizing with each other and the other sections of the Act. *See generally Park and Recreation Commission v. Department of Finance*, 15 Utah 2d 110, 388 P.2d 233 (1964). The Legislature can hardly have intended that a construction should be placed on Section 1 that would result in harsh and unfair results in applying the remainder of the Act.

■ It is obvious from the language of the Act that the intent of the Legislature was to accomplish two objectives: first, to alleviate the harshness of the old common law doctrine of contributory negligence; and second, to provide for a system of loss allocation by apportioning liability based at least in part on fault and to provide for contribution among tortfeasors according to fault.

It is also clear from Section 4(2) of the Act that joint tortfeasors are liable for contribution without regard to their degree of negligence unless there is such a "disproportion of fault" that it would be "inequitable" for there to be "an equal distribution by contribution among them of their common liability...." If the trial court makes a finding that contribution by equal distribution among the joint tortfeasors (all of them) would be inequitable, then the "relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares ...," but that is *solely for the purpose of determining their rights of contribution among themselves, each remaining severally liable to the injured person for the whole injury as at common law.*" Section 4(2) (emphasis added).

That language is as clear as language permits. A construction of Section 1 of the Act requiring application of the Wisconsin rule would clearly conflict with the language of Section 4(2). The determination of the "relative degrees of fault of joint tortfeasors" may not be used to excuse some tortfeasors from liability. That determination is "solely" to effectuate an eq-

uitable contribution among the tortfeasors. Section 4(3) reinforces the stated purpose of Section 4(2). Section 4(3) states that the term "joint tortfeasor" means "one of two or more persons, jointly or severally liable in tort for the same injury to person or property..." even though judgment has been recovered against all or only some of such persons. Thus, the rule established by Section 4(2) makes *all* defendants subject to joint and several liability for the *whole* injury, and that rule is subject only to the rule governing contribution. It is irrelevant whether a tortfeasor's negligence in a multi-defendant case is greater or lesser than the plaintiff's, irrespective of whether the tortfeasor is a party defendant. Section 5 reinforces the same concept.

Section 1 of the Act must also be read in light of Section 2. The latter section provides that the court may, on its own initiative or when requested by a party, direct the jury to find separate special verdicts in determining the total amount of damages suffered and the percentage of negligence attributable to each party. As under Section 4, *the determination of the degrees of fault is not to be used to excuse any tortfeasor from liability in a multi-defendant case; it is rather to be used only for the purpose of dealing with the issue of damages.* Thus, the total amount of damages is to be reduced solely by the amount of damages attributable to the "person seeking recovery"—not by any other factor—as the Wisconsin rule would require in some cases.

Thus, the Wisconsin rule directly conflicts with the explicit statutory language in both Sections 1 and 2, which only allow reduction of the total "amount of damages" by the amount of damages attributable "to the person seeking recovery," and not by the amount of damages attributable to a defendant whose negligence is found to be less than the negligence of the plaintiff. This double reduction would also violate the express statutory mandate that the "relative degrees of fault of the joint tortfeasors shall be considered in determining the pro rata shares, solely for the purpose

of determining their rights of contribution among themselves .... " Section 4(2).

Obviously, the ascertainment of the relative degrees of fault of joint tortfeasors is not necessary for determining whether the plaintiff can recover against a defendant or defendants at all. Whether the plaintiff can recover is a threshold issue that the trier of fact decides by determining whether the plaintiff's negligence, if any, exceeds the totality of the tortfeasors' negligence. No special verdict is required for that determination. That is precisely why Section 2 of the Act does not make it mandatory that there be special verdicts returned in all cases. In addition, both Sections 1 and 2 of the Act make clear beyond peradventure that the only allowable deduction from the total damage suffered is the amount attributable to the plaintiff's proportion of negligence. There is no authorization for deducting any other amount from the total damage figure.

If a tortfeasor were not liable as a result of the "Wisconsin" or "individual" rule of comparison, a serious inequity in the distribution of financial liability among tortfeasors would arise. Under Section 5, nothing in the Utah Act affects the "common law liability of the several joint tortfeasors to have judgment recovered, and payment made, from them individually by the injured person for the *whole injury*" (emphasis added). One inequitable consequence of applying the Wisconsin rule to the Utah Act would be to make a defendant liable for that portion of the injury for which he was not responsible and for which another tortfeasor was. That result is counter to the concepts of comparative negligence and joint and several liability.

Furthermore, it should be noted that the language of Section 1, as such, is not necessarily inconsistent with the unit rule. That section only refers to a plaintiff's negligence not being "as great as the negligence or gross negligence of *the person* against whom recovery is sought .... " (Emphasis added.) The statutory language is not the "negligence of *any* person against whom recovery is sought"; rather

the language used was intended to mean "the person or persons" so as to include both single-defendant and multi-defendant cases. That construction is suggested by the text and is in full harmony with U.C.A., 1953, § 68–3–12, which provides rules for construction of Utah statutes. Subparagraph (6) states, "The singular number includes the plural, and the plural the singular." Application of § 68–3–12 makes Section 1 of the Utah Comparative Negligence Act harmonious with the rest of the Act. *Graci v. Damon*, 6 Mass.App. 160, 374 N.E.2d 311, 317 (1978), applied a comparable Massachusetts statutory provision to the precise word at issue here, thereby requiring that the statute be read to mean "persons" in a multi-defendant case so that the plaintiff's negligence was compared against the aggregate of all the defendants.

The meaning that emerges from Section 1 by applying § 68–3–12(6) is consistent with the rulings of a number of courts which have held that the singular term *defendant* (or other synonymous nouns) also means the plural. *Walton v. Tull*, 234 Ark. 882, 356 S.W.2d 20 (1962); *Graci v. Damon*, 6 Mass.App. 160, 374 N.E.2d 311 (1978), *aff'd*, 376 Mass. 931, 383 N.E.2d 842 (1978); *Bradley v. Appalachian Power Co.*, W.Va., 256 S.E.2d 879 (1979). *See contra Odenwalt v. Zaring*, 102 Idaho 1, 624 P.2d 383 (1981); *Board of County Commissioners v. Ridenour*, Wyo., 623 P.2d 1174 (1981).

### III.

The Wisconsin rule is the minority position in this country. Only five states adhere to it, whereas at least fourteen jurisdictions have adopted the unit rule of comparison either by statute or case law. Heft and Heft, *Comparative Negligence Manual*, Appendix II (Supp.1983). Another four states have adopted the doctrine of pure comparative negligence by judicial decision—Alaska, *Kaatz v. State*, 540 P.2d 1037 (1975); California, *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975); Florida, *Hoff-*

*man v. Jones,* 280 So.2d 431 (1973); and Michigan, *Kirby v. Larson,* 400 Mich. 585, 256 N.W.2d 400 (1977). In addition, four other states—Mississippi, New York, Rhode Island, and Washington—have adopted unit comparative negligence by statute. *See Bradley v. Appalachian Power Co., supra,* 256 S.E.2d at 883. At least twenty-seven states have statutes ameliorating the effect of the harsh common law doctrine of contributory negligence. Fundamentally, these statutes permit a negligent plaintiff to recover as long as his negligence is not in excess of some amount, usually 50 percent. *Id.* at 882, n. 4.

The refusal of the majority of the states that have dealt with the subject to adopt the Wisconsin rule indicates a widespread perception that that rule is not sound. Almost without variation, those states that have adopted the Wisconsin rule have done so on the rather wooden analysis that the Legislature must have intended to adopt the court decisions construing the Wisconsin statute as a part of that state's law.

Even apart from the evident meaning and effect of the sections which were added to the first section of the Act to provide a comprehensive treatment of the subject matter, we would be reluctant to construe the Act to enact a policy that is so inequitable that even the Wisconsin Supreme Court, based on much experience with that policy, has severely criticized it.

### IV.

The defects of the Wisconsin rule suggest why the Legislature undertook to change the Wisconsin rule. First, it is axiomatic that there can be no more than 100 percent negligence when the negligence of all defendants and the plaintiff is added up. But that would never be the case in multi-defendant cases in which a defendant is excused from liability under the Wisconsin rule. Thus, for example, if a plaintiff is 20 percent negligent in stopping on a highway and each of four defendants who rear-end the plaintiff is 20 percent negligent, the plaintiff under the Wisconsin rule will recover nothing because the plaintiff's 20 percent negligence is not applied against the total negligence of the defendants. Thus, under the Wisconsin rule, plaintiff's negligence is used four different times to cancel out each of the defendants' negligence. By the magic of the formula employed, the plaintiffs 20 percent becomes an effective 80 percent, and the total percentage of negligence in the case, combining that attributable to the plaintiff and that attributable to the defendants, totals 160 percent. If plaintiff's negligence were applied once, there would be a total of 100 percent negligence when plaintiff's and defendants' negligence are combined.

The unfairness of the Wisconsin rule is also apparent in a situation where a plaintiff is 33⅓ percent negligent and each of two defendants is also 33⅓ percent. Under those circumstances, the plaintiff could recover nothing. However, if the same injury were inflicted by the same cause but only one defendant were responsible for producing the injury, the plaintiff would recover 66⅔ percent of the damages inflicted.

In short, one of the anomalous consequences of the Wisconsin rule is that the more defendants who inflict an injury, the less likely a plaintiff will be to recover. Thus, if 50 riparian landowners are responsible for polluting a stream and are negligent in equal percentages for causing 98 percent of the damage to the property of a downstream owner who is only 2 percent contributorily responsible, the plaintiff recovers nothing! The Utah Act was not intended to adopt a rule that would permit such extraordinary consequences.[3]

---

**3.** There are three situations sometimes asserted to demonstrate that the unit rule leads to unfair results. The first is the situation presented by the instant case; the plaintiff's negligence is less than the cumulative negligence of all the tortfeasors but is more than a particular defend-

It may be that Wisconsin has reason to live with such a rule, but Utah does not, and the Legislature in effect has said so.

Reversed and remanded for entry of judgment on the verdict. Costs to appellants.

HOWE and DURHAM, JJ., concur.

OAKS, J., having disqualified himself, does not participate herein; DEE, District Judge, sat.

HALL, Chief Justice (dissenting).

I do not subscribe to the Court's interpretation of the applicable statute, which reads in pertinent part as follows:

> Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence or gross negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence or gross negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering....[1]

The legislative intent behind the foregoing statute can be readily ascertained by examining the history of the adoption of the Utah comparative negligence law. Utah's comparative negligence statute, enacted in 1973, is virtually identical to the Wisconsin comparative negligence statute in effect in 1971, from which it was adopted.[2] The general rule regarding the statutory construction of "adopted statutes" is as follows:

> In the case of a statute adopted from another jurisdiction, the legislature may be presumed to have been familiar with the decisions of the courts of the foreign jurisdiction having a bearing on the operation of the statute in the absence of an expression of legislative intention to the contrary, to have adopted the statute in view of the construction put upon it by the courts of such jurisdiction, and with the intention that the adopted statute should receive the same interpretation. Indeed, it is the well-settled rule that when a statute is adopted from another state or country, the judicial construction already placed on such statute by the highest courts of the jurisdiction from which it is taken is treated as incorporat-

ant's. That is said to be unfair because a plaintiff should not be able to recover from a defendant who is less negligent than the plaintiff. *See Bd. of County Comm'rs v. Ridenour,* Wyo., 623 P.2d 1174 (1981). The second situation is where there are two defendants and one plaintiff; all parties are 33⅓ percent at fault. Under the unit rule, the plaintiff recovers 66⅔ percent of his or her total damages. That is said to be unfair because if there were only one defendant who is 50 percent liable, the plaintiff would recover nothing.

However, the plaintiff is not the primary cause of the injuries in either of the two situations discussed and therefore should be entitled to recover. The defendants, meanwhile, are required to do nothing more than compensate the plaintiff for the injury in proportion to their fault, with the plaintiff absorbing his own proportion of fault.

The third alleged inequitable result under the unit rule arises when one defendant is judgment proof. For example, suppose plaintiff is 15 percent negligent, defendant A is 10 percent negligent, and defendant B is 75 percent negligent; B, however, is judgment proof. Under the Utah statute, A might be liable for 85 percent of

plaintiff's damages. That situation, however, is a product of the rule of joint and several liability—not comparative fault. Prior to adoption of the *comparative negligence statute,* a plaintiff free from contributory negligence could recover the entire amount of damages from a defendant whose negligence was slight. And the problem of the judgment-proof defendant exists under the Wisconsin rule as well. Suppose plaintiff is 10 percent at fault, defendant A is 15 percent at fault, and defendant B is 75 percent at fault; B is judgment proof. Under the Wisconsin rule, defendant A is liable for 90 percent of plaintiff's damages, a result no less inequitable than that reached by the unit rule.

1. U.C.A., 1953, § 78-27-37.

2. In 1971, the Wisconsin legislature changed the phrase "as great as" to "not greater than," thus permitting the plaintiff to recover where the negligence of plaintiff and defendant are both determined to be 50 percent. This change did not affect the phrase "person against whom recovery is sought" or the judicial construction thereof and therefore has no bearing in the present case.

ed therein so as to govern its interpretation [citing cases].[3]

The Wisconsin Supreme Court has consistently construed its comparative negligence statute to require individual or one-on-one comparison (i.e., the negligence of the plaintiff is weighed against that of individual defendants rather than all defendants combined).[4] This construction was clearly articulated in the case of *Soczka v. Rechner*,[5] which involved facts nearly identical to those of the present case. In *Soczka*, plaintiff was found 45 percent negligent and the defendants, 30 percent and 25 percent respectively. In response to the plaintiff's attempt to combine the negligence of the defendants, in order to recover, the Wisconsin court stated:

> However, this court has repeatedly interpreted the comparative negligence statute as clearly providing that the comparison of negligence between the plaintiff and the multiple tort-feasors involves a separate comparison between the plaintiff and each of the defendants.

*Soczka v. Rechner*, 242 N.W.2d at 914.

Other states that have adopted the Wisconsin statute and have incorporated the Wisconsin interpretation thereof are Idaho, Wyoming and New Jersey. Because these states' comparative negligence statutes were derived from the same source and are nearly identical to Utah's, their judicial interpretations of those statutes are also significant and pertinent in this case. A further rule regarding statutory construction by foreign courts of the same or similar statutory language directs:

> It is a general rule of law that where a question of statutory construction is one of novel impression, it is proper to resort to decisions of courts of other states construing statutory language which is identical or of similar import [citing cases]. Indeed, it is highly desirable that a statute be given a similar interpretation by the courts of the several states wherein it is in force.[6]

The state of Idaho adopted the Wisconsin comparative negligence statute in 1971 and construed that statute, with respect to its effect in multiple-defendant litigation, in the case of *Odenwalt v. Zaring*.[7] In that case, a jury found the plaintiff to be 25 percent negligent and the defendants, 10 percent and 65 percent respectively. The trial court, relying on these allocations, entered judgment on the verdict in favor of plaintiff against the defendant whose negligence was 65 percent, but denied plaintiff any judgment against the defendant whose negligence was only 10 percent. Plaintiff appealed, seeking a judgment against the 10 percent negligent defendant based on the "unit rule" construction of the statute. The Idaho State Supreme Court rejected the combined comparison approach and affirmed the trial court on the following basis:

> This court has consistently held that "[a] statute which is adopted from another jurisdiction will be assumed to be adopted with the prior construction placed upon it by the courts of such other jurisdiction" [citing cases]. Therefore, in the absence of some other legislation which would clearly suggest a different result, we should follow the interpretation which the Wisconsin Supreme Court had placed upon their comparative negligence statute prior to 1971.[8]

The Idaho court was further called upon to reconcile its decision in *Odenwalt* with a statutory provision, identical to U.C.A., 1953, § 68–3–12(6), providing that "[u]nless otherwise defined for purposes of a specific statute ... the singular number includes

---

3. 73 Am.Jur.2d Statutes § 333 at 476 (1974).

4. See *Reiter v. Dyken*, 95 Wis.2d 461, 290 N.W.2d 510 (1980); *Mariuzza v. Kenower*, 68 Wis.2d 321, 228 N.W.2d 702 (1975); *Schwenn v. Loraine Hotel Co.*, 14 Wis.2d 601, 111 N.W.2d 495 (1961).

5. 73 Wis.2d 157, 242 N.W.2d 910 (1976).

6. 73 Am.Jur.2d Statutes § 166 at 370 (1974).

7. 102 Idaho 1, 624 P.2d 383 (1980).

8. *Id.* at 387.

the plural and the plural the singular, ...." [9] The court held:

> Appellant argues that application of this section alters the literal language of I.C. § 6–801 as follows: that the plaintiff can have no recovery unless "his negligence was not as great as the negligence ... of the person [or persons] against whom recovery is sought." Such a reading would, of course, tend to support the unit rule construction. However, I.C. § 73–114 is to be used only to give effect to legislative intent, not to determine it. We have recently held that "I.C. § 73–114 is not mandatory by its terms but merely instructive that the singular may be extended or applied to the plural. It is not a rule of general application and applies only when necessary to carry out the obvious intent of the legislature" [citing cases]. [10]

I believe this reasoning to be sound.[11] The legislative intent regarding U.S.C.A., 1953, § 78–27–37 clearly emerges from a literal (singular) reading of the statute. Application of U.C.A., 1953, § 68–3–12(6) to this particular statute is therefore unnecessary and inappropriate.

In any event, the fallacy of concluding that the term "person" as it appears in the Utah statute, *supra*, also includes the plural is borne out by the fact that the term not only designates the person entitled to recover, but also the person against whom recovery is sought. As a necessary consequence, if the plural is to be applied, the combined negligence of *multiple plaintiffs*, as well as that of *multiple defendants*, must then be compared to determine liability. Obviously, this would be wholly unworkable, and it has long been recognized that a separate comparison of the negligence of the parties, both plaintiffs and defendants, is appropriate.[12]

Wyoming construed its comparative negligence statute in the case of *Woodward v. Haney*.[13] The Wyoming court acknowledged the adoption of the Wisconsin comparative negligence statute and further held:

> Where a statute that has been construed by the courts of last resort of another state has been enacted in the same terms by the Wyoming legislature, the legislature is presumed to have adopted it as part of the law and intended the same construction apply in this state ....[14]

The conclusion was then reached that the legislature intended to adopt Wisconsin's judicial construction of the comparative negligence statute.[15]

The Wyoming court also made an important distinction between states that follow the "Wisconsin rule" and those that do not. Referring to the latter category, the court said:

> Other state legislatures that have adopted comparative negligence statutes based upon Wisconsin's have inserted specific language to demonstrate their intent to apply the "Arkansas rule" when multiple defendants or potential defendants are present. For example in Kansas, recovery is allowed if the plaintiff's "negligence was less than the causal negligence of the party or parties against whom claim for recovery is made ...," K.S.A. § 60–258(a) (1976). In Connecticut, liability will exist if the plaintiff's negligence "was not greater than the combined negligence of the person or persons against whom recovery is sought ...." Connecticut General Statute § 52–572h(a) (1975). However, the Wyo-

9. I.C. § 73–114.

10. 624 P.2d at 387 n. 5.

11. *See also Board of County Commissioners of the County of Campbell v. Ridenour*, Wyo., 623 P.2d 1174 (1981).

12. *Callan v. Wick*, 269 Wis. 68, 68 N.W.2d 438 (1955); Bouchard, "Comparative Negligence," 55 Mass.L.Q. 125 (1970).

13. Wyo., 564 P.2d 844 (1977). *See also Board of County Commissioners of the County of Campbell v. Ridenour, supra* n. 11.

14. 564 P.2d at 845.

15. *Id.* at 846.

ming legislature did nothing to indicate that its intent was to deviate from the "Wisconsin rule." [16]

Likewise, the Utah legislature has done nothing to indicate an intent to deviate from the "Wisconsin rule." Consequently, the language of the statute must be given its plain, literal meaning. Particularly is this true in light of the fact that the legislature adopted not a "pure" kind of comparative negligence where the plaintiff's damages are simply reduced by the percentage of his own negligence, but instead adopted a "modified" type that deprives the plaintiff of recovery if his negligence was as great or greater than "the person against whom recovery is sought."

New Jersey's comparative negligence statute is also nearly identical to Utah's. The following observations have been made by the New Jersey State Supreme Court regarding that statute:

> By 1973 the field of comparative negligence was no longer open country. Courts and legislatures throughout the nation had charted clear paths which led to specific results. New Jersey considered the alternatives over a long period of time prior to selecting its own brand of comparative negligence law [citing cases]. The chosen package included not only the Wisconsin statute but also the state's judicial interpretations. 2A Sutherland, Statutory Construction (4 ed. 1973), § 52.02 at 329. In the absence of some express legislative intent or statutory pronouncement, the words of the statute must be given their simple and ordinary meaning [citing cases]. Therefore, plaintiff's degree of negligence must be measured against that of each individual defendant.[17]

The legislative intent behind U.C.A., 1953, § 78–27–37 can be further ascertained by reviewing this Court's recent decision in the case of *Yost v. State*, Utah, 640 P.2d 1044 (1981). There, al-

though the precise issue as to whether this state has adopted the "Wisconsin rule" or the "unit rule" was not addressed, the Court did reveal, in its discussion of contribution among joint tortfeasors, that the negligence of each tortfeasor was to be compared individually against the plaintiff. The appellant-defendant Petersen had been assessed 10 percent of the negligence contributing to the plaintiff's (Yost) injuries. The plaintiff was found 5 percent negligent and the remaining defendants, 80 percent and 5 percent respectively. In response to appellant's argument that these allocations of negligence were improper, this Court cited U.C.A., 1953, § 78–27–37 for the proposition that:

> [T]he liability of the various tort-feasors being joint and several, the percentage of negligence attributable to each of them does not affect Petersen's liability because his negligence was found to be greater than that of Yost. Regardless of the percentage of liability attributable to Petersen relative to the other defendants, he is liable . . . . [18]

Thus, the liability of each tortfeasor was determined by comparing his individual negligence to that of the plaintiff in causing the injuries. This reasoning is clearly consistent with the "Wisconsin rule."

I also view as significant and pertinent in the resolution of this matter the scholarly article entitled "Comparative Negligence, Contribution Among Tortfeasors and the Effect of a Release—A Triple Play by the Utah Legislature," 1973 *Utah L.Rev.* 406, 412, wherein the late Professor E. Wayne Thode described our Comparative Negligence Act as follows:

> The Act makes clear that plaintiff's degree of negligence must be less than the degree of *each* of the defendants against whom he seeks judgment.[28] [Footnote 28: If plaintiff's negligence is 40% and the negligence of each of three defendants is 20%, then plaintiff recovers noth-

---

**16.** 623 P.2d at 1184.

**17.** *Rawson v. Lohsen*, 145 N.J.Super. 71, 366 A.2d 1022, 1024–25 (1976).

**18.** *Yost v. State*, 640 P.2d at 1048.

ing ....] If the plaintiff's degree of negligence is found by the trier of fact to be the same as, or greater than, the degree of negligence of a party defendant, that defendant is granted an immunity from liability by the specific terms of the Act. [Emphasis contained in original text.]

The Supreme Court of Colorado recently addressed the issue presented by this appeal.[19] In that case, the negligence of the plaintiff and the two defendants was equally apportioned at 33⅓ percent each. In permitting the plaintiff to recover by combining the negligence of the two defendants, the court acknowledged the marked split of authority and cited a rather exhaustive number of cases that have been decided on both sides of the issue.[20]

The Colorado court chose to base its holding on what it termed the "unfairness" of the individual comparison rule, observing:

> The only unfairness resulting from the combined comparison approach is in the situation where the primarily negligent tortfeasor is judgment proof and the remaining tortfeasors are less negligent than the plaintiff. For example, assume that the plaintiff is 25% negligent, one defendant is 35% negligent and insolvent, and two other defendants are each 20% negligent. The defendants who are 20% negligent could be liable for the damages recoverable against all defendants even though their individual negligence was less than the plaintiff's. We are persuaded that this hypothetical injustice is more illusory than real. The Uniform Contribution Among Tortfeasors Act, sections 13–50.5–101 to 106, C.R.S.1973 (1982 Supp.), provides for the equitable apportionment of damages among tortfeasors according to relative degrees of fault. Section 13–50.5–103. Under the act, a single tortfeasor does not have to bear the entire losses for a [sic] injury

where others are also to blame. However, the contribution act specifically retains the common law doctrine of joint and several liability for each tortfeasor. [Cites omitted.] Thus, joint tortfeasors will have to bear more than their pro rata share of the losses only when one tortfeasor is unable to pay judgment.[21]

It appears that the foregoing example is not the only unfairness that accompanies the application of the combined comparison rule. As the court aptly observed:

> The comparative negligence statute was intended to ameliorate the harshness of the common law rule of contributory negligence as a bar to any recovery and to apportion damages more equitably among those who cause the losses. [Cites omitted.][22]

Applying the equitable principles of comparative negligence, it not only appears unfair, but it is also contrary to the Utah statute to require a defendant whose negligence is less than or only equal to that of the plaintiff to respond in damages. It further appears that even a greater unfairness results should a 40 percent negligent plaintiff be permitted to recover against a 5 percent negligent defendant whose codefendant is 55 percent negligent, but is insolvent or otherwise insulated against the recovery of damages. A similar unfairness is to be seen should a 40 percent negligent plaintiff be permitted to recover against any one of three defendants, each of whom is 20 percent negligent, despite the fact that their individual negligence is only *one-half* that of the plaintiff.

The Utah statute also retains the common law doctrine of joint and several liability for each tortfeasor.[23] Nevertheless, application of the individual comparison rule is not in conflict therewith. This is to be seen inasmuch as the statute defines a "joint tort-feasor" as "one of two or more

---

**19.** *Mountain Mobile Mix, Inc. v. Gifford,* Colo., 660 P.2d 883 (1983).

**20.** *Id.* at 886.

**21.** *Id.* at 888–89.

**22.** *Id.* at 888.

**23.** U.C.A., 1953, § 78–27–40(2).

persons, jointly or severally *liable in tort* ...." [24] Again applying the literal language of the comparative negligence statute, a defendant whose negligence is "not as great as" that of the person seeking to recover has no *liability* as a tortfeasor, and in the absence of liability to the plaintiff, no right of contribution exists against him.[25]

Numerous other examples have been cited by the proponents of both rules of construction to illustrate the inequities that may arise from the application of either the individual comparison rule or the combined comparison rule. However, the following language from *Board of County Commissioners of the County of Campbell v. Ridenour, supra,* articulates this author's view concerning these possible inequities:

> Weighing the effects of either rule does not lead to a decisive conclusion one way or the other. Whatever examples we attempt to build, depending upon the posture the beholder has in or believes about litigation, some will find fairness and others will visualize unfairness.
>
> ....
>
> ... We as a court represent neither plaintiffs nor defendants.
>
> ....
>
> ... When we consider the "advantages" one way or the other, we become more convinced that we are dealing with what is a legislative function to establish concepts of fairness and unfairness. The legislature created the doctrine; and when we construe its language to carry out its intent, our function ends. There remains in a debatable subject such as this a societal decision for the legislature.[26]

In accordance with the foregoing reasoning and authorities, I echo the conclusion reached by the Idaho State Supreme Court in *Odenwalt v. Zaring, supra:*

> Whatever this court may feel about the complex field of comparative fault, we are not given free rein. We are bound by the intent of the legislature. In view of our legislature's adoption of the Wisconsin comparative negligence statute, legislative intent is readily ascertainable. We adopt the Wisconsin or individual rule.[27]

I would affirm the trial court's judgment of dismissal.

DEE, District Judge, concurs in the dissenting opinion of Chief Justice HALL.

---

24. U.C.A., 1953, § 78–27–40(3).

25. U.C.A., 1953, § 78–27–37.

26. 623 P.2d at 1185, 1186.

27. 624 P.2d at 388.